# CHANDLER *v.* CALUMET AND HECLA MINING COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF MICHIGAN.

No. 202. Argued April 6, 7, 1893. — Decided April 24, 1893.

Swamp lands in Michigan which were not embraced in the list of such
lands, made by the Surveyor General February 12, 1853, as coming
within the provisions of the grant to the State of September 28, 1850, 9
Stat. 514, c. 84, which list was approved by the Secretary of the Interior
January 11, 1854, and which lands were patented to the State March 3,
1856, as so listed and approved, were not included within the said grant
of September 28, 1850.

These several official acts, by the proper officers, operated as an adjudication
as to what were swamp lands within the grant of September 28, 1850,
and to exclude contradictory parol evidence.

The grant by the State, May 25, 1855, of the land in controversy here,
operated to convey it to the grantee, whether the State's title was
acquired under the swamp land act, or under the grant of August 6,
1852, 10 Stat. 35, c. 92, for the purpose of building a ship canal.

*Railroad Co.* v. *Smith,* 9 Wall. 95, explained, qualified and distinguished
from this case.

THIS was an action of ejectment brought by the plaintiff in
error, a citizen of Illinois, against the defendant in error, a
Michigan corporation, to recover a tract of forty acres of land
in Houghton County, Michigan, particularly described as the
southeast quarter of the northwest quarter of section 23,
township 56 north, range 33 west.

Both parties to the controversy derive their title from the
State of Michigan, the plaintiff under a patent of the State
issued to him on November 3, 1887, and the defendant by
various mesne conveyances, under a state patent issued to the
St. Mary's Falls Ship Canal Company, a New York corpora-
tion, on May 25, 1855. The material and uncontroverted facts
of the case, on which the questions involved depend, are the
following. By the act of Congress, approved September 28,
1850, 9 Stat. 519, c. 84, known as the swamp land act, there

was granted to the State of Michigan the whole of the swamp and overflowed lands, made unfit thereby for cultivation, within the State, and it was made the duty of the Secretary of the Interior to make lists and plats of such lands, and transmit them to the governor of the State, and cause patents therefor to issue conveying such lands in fee simple. After the passage of this act the Commissioner of the General Land Office, by correspondence with the authorities of the State, suggested, through the surveyor general thereof, as a mode or method of selecting or segregating the swamp from the other public lands, that the field-notes of the United States surveys of lands should be accepted by the State as the basis of identification of the swamp lands which were intended to be granted by Congress. An act of the legislature of Michigan, passed June 28, 1851, No. 187 Sess. Laws, 1851, p. 322, accepted the grant, and adopted, as suggested by the Secretary of the Interior, or the Commissioner of the General Land Office, the field-notes of the United States surveys as a basis upon which the swamp lands should be identified and segregated. The surveyor general, on February 12, 1853, made lists of lands which he ascertained to be swamp and within the provisions of the grant, from the field-notes so agreed upon. Those lists were transmitted to the Secretary of the Interior, and by him approved January 11, 1854, and under date of February 24, 1854, a copy of said lists was certified by the Commissioner of the General Land Office to the governor of the State, and thereafter, on March 3, 1856, a patent was issued to the State for the lands described in said lists. The lists of the lands so selected and approved to the State were lodged in the Michigan land office. The lands thus selected and patented to the State, while embracing some portion of township 56 north, range 33 west, did not include the land in controversy.

By an act of Congress, approved August 26, 1852, 10 Stat. 35, c. 92, there was granted to the State of Michigan, for the purpose of building a ship canal around the Falls of St. Mary's, "seven hundred and fifty thousand acres of public lands, to be selected in subdivisions, agreeable to the United States surveys, by an agent or agents to be appointed by the governor

of said State, subject to the approval of the Secretary of the Interior, from any land within said State subject to private entry." The State accepted this grant by acts of its legislature approved respectively February 5 and February 12, 1853, Session Laws 1853, Nos. 38 and 61, pp. 48, 86, and authorized commissioners of the State to enter into a contract for the building of such canal. In pursuance of this authority a contract was entered into between the State and certain designated parties for the construction of the ship canal, by the terms of which the parties undertaking its construction, or their assignees, were to receive from the State of Michigan 750,000 acres of land at $1.25 per acre, to be located under the provisions of the act of August 26, 1852. The terms of this contract need not be specially set forth, as no question arises thereon.

The parties undertaking the construction of the canal subsequently assigned and transferred all their rights and privileges in the contract to the St. Mary's Falls Ship Canal Company. By the act of the legislature authorizing the contract for the construction of the canal, the State undertook the selection of the lands under said grant, and the contractors were to receive the lands so *selected* in payment for the work of building the canal. The fifth section of the act of the state legislature provided that " when and as fast as the lands shall have been selected and located, an accurate description thereof, certified by the persons appointed to select the same, shall be filed in the office of the commissioner of the state land office, whose duty it shall be to transmit to the Commissioner of the General Land Office a true copy of said list, and to designate and mark upon the books and plats in his office the said lands as St. Mary's Canal lands."

By section 6 it was provided that after the completion of the canal, within the time specified, to the satisfaction of, and the acceptance thereof by, the commissioners, the governor, and engineer, and a certificate of that fact filed in the office of the state land office, it was made the duty of said commissioner " forthwith to make certificates of purchase for so much of said lands as by the terms of the contract for the construc-

tion of said canal are to be conveyed for the purpose of defraying its costs and the expenses hereinbefore provided for, which certificates shall run to such persons and for such portions of said lands so selected and to be conveyed as the contractor may designate, and shall forthwith be delivered to the secretary of State, and patents shall immediately be issued thereon, as in other cases."

The St. Mary's Falls Ship Canal Company, as the assignee of the construction contract, completed the canal and became entitled to the consideration which the State was to pay therefor.

The agents appointed by the State to select and locate the lands granted for the purpose of building the canal made selections to the amount required, the list of which was filed in the general land office of the State, and was certified to the Secretary of the Interior, who, under date of January 24, 1855, duly approved the same to the State of Michigan, under the act of Congress of August 26, 1852. The list of selected lands under this grant, and so approved by the Department of the Interior, included the demanded premises, and on May 25, 1855, the governor of the State, in pursuance of the foregoing legislation and contract on the subject, issued a patent to the St. Mary's Falls Ship Canal Company for a large portion of these selected lands, including therein, by particular description, the premises in controversy, which by mesne conveyances passed to the defendant in error, which entered into possession of the same, and was in actual possession thereof at the commencement of the present suit. This conveyance was duly recorded, and after the expiration of five years from the date of the patent, during which they were exempt from taxation, the lands so patented to the canal company have been continually subject to taxes by the State.

It is shown from the foregoing statement of facts, and it is conceded, that the demanded premises had never been selected as a part of the swamp lands granted to the State, nor had the same ever been approved to the State as such, and that no list or plat of swamp lands in Michigan, made by, or by the authority of, the Secretary of the Interior, contained or

described the tract in question as swamp land, although a portion of the land in the vicinity thereof, and in the same township, was included in the lists of such lands which were selected and approved by the Secretary of the Interior.

It thus appears that the plaintiff and the defendant have each a conveyance from the State of Michigan for the particular tract of land in controversy, and that the conveyance to the defendant in error was prior in time to the conveyance to the plaintiff in error. The latter, however, claims that the demanded premises were a part of the swamp and overflowed lands granted to the State by the act of Congress of September 28, 1850, and as such were conveyed to him by the patent of the State issued on November 3, 1887, and that he thereby acquired a title to the same, superior to that which the defendant in error acquired under the prior patent to the canal company, through which the defendant in error derives its title. In support of this contention it is urged that the swamp land act was in effect a grant *in præsenti*, so that the title of the State to such lands dated from the date of that act, and consequently the State did not and could not acquire title to the tract in question under the act of August 26, 1852.

On the other hand, the defendant in error insists that the act of the State and of the Department of the Interior, in the selection of lands under the swamp land act, amounted to an adjudication or a determination on the part of the Department of the Interior, that the parcel of land in question was not embraced within the provisions of the act of 1850, and that the same, having been affirmatively and particularly selected and certified to the State, under the grant of August 26, 1852, was a direct adjudication, that it came properly within the canal grant; that the legal effect and operation of the two selections, considered together, made with the consent and concurrence of the State, was to exclude, by implication, the particular premises here involved from the operation of the former grant, and to expressly include the same within the latter grant; and that this adjudication or determination of the department cannot be collaterally attacked or called in question in an action at law. The defendant in error further

contends that, even conceding that the title of the State to
the lands in question was derived under the act of 1850, it.
acquired the superior title thereto, under and by virtue of the:
conveyance made to the St. Mary's Falls Ship Canal Company
by the State's patent of May 25, 1855, which operated to pass.
to said company whatever title the State had to the premises.
in question, independently of the source from which it had
derived its title.

On the trial of the case by the court and jury the plaintiff,.
to maintain the issues on his part, introduced his patent from
the State, and offered oral evidence to prove that the tract.
conveyed thereby, and involved in the suit, with the exception.
of about seven acres thereof, was in fact swamp and overflowed
land, being wet and unfit for cultivation, within the meaning·
of the swamp land act of Congress, and was so at the time of
the approval of the act.    To this evidence the defendant ob--
jected, and the court, reserving its ruling thereon until after
the defendant had introduced its proof, sustained the objection,.
and refused to allow the evidence to go to the jury, to which
ruling the plaintiff excepted.

After all the evidence in the case had been introduced, the·
plaintiff, by his counsel, requested the court to direct the jury
to return a verdict in his favor.    This the court refused to do,.
and instructed the jury to bring in a verdict for the defendant,.
which was accordingly done, and judgment was entered
thereon, to which the plaintiff excepted; and to reverse this.
judgment the present writ of error is prosecuted.

· The opinion of the court below is reported in 36 Fed. Rep..
665; and its action in rejecting the oral testimony and in
directing a verdict for the defendant was rested upon two·
grounds: First, that after the Secretary of the Interior had
discharged his duty and approved the list of swamp lands,
made, in accordance with his suggestion, from field-notes of
government surveys with the consent of the State, which·
selection and identification did not include the parcel of land
in question, although embracing other lands in the same town--
ship, there was in effect a determination that the land in con--
troversy was not covered by or embraced within the swamp

land grant; and, secondly, that the State, having accepted the parcel of land in question, under the grant of 1852, and having conveyed the same to the canal company, was estopped from thereafter asserting any title thereto.

*Mr. James K. Redington* and *Mr. J. M. Wilson,* (with whom was *Mr. Frank E. Robson* on the brief,) for plaintiff in error.

I. Upon the facts shown by the record the title of the plaintiff in error is good, and he was entitled to a verdict and judgment without oral proof of the actual character of the land.

That the swamp land act of 1850 operated as a grant *in præsenti* to the States then in existence, including the State of Michigan, and vested title as of the date of its passage, is settled by abundant and uninterrupted authority. *Railroad Co. v. Smith,* 9 Wall. 95; *French v. Fyan,* 93 U. S. 169; *Martin v. Marks,* 97 U. S. 345; *Rice v. Sioux City &c. Railroad,* 110 U. S. 695; *Wright v. Roseberry,* 121 U. S. 488.

Starting with this fundamental consideration, it is entirely clear that if the tract in controversy is shown by the record to have been swamp and overflowed at the date of the act of September 28, 1850, then the plaintiff has the paramount and conclusive legal title. In other words it by any proper and legitimate means, identification of the tract in question as swamp and overflowed land appears in the record, then the charge of the court below was error, the jury should have been charged to find for the plaintiff and the judgment of this court should remand the case for new trial.

Such an identification, independently of any present investigation as to the fact, appears in the record. The Surveyor General, while the official plat of this land was still within his cus by, placed thereon the usual official mark to show that the entire forty-acre tract was to be classed as swamp and so returned to the General Land Office. There can be no reasonable doubt that it was the intention of that officer at the time of making up his list to be reported to the Com-

missioner, to include this particular forty acres as swamp, and that its omission from his list and the consequent fact that no patent has ever issued thereon, were results of a mere clerical mistake. That plat and the papers on which it was based constitute the real adjudication.

It follows that the tract in controversy was fully identified and set apart as swamp by the rule of determination adopted by the government, and that this identification, according to this rule, was complete and perfect. This being so, the failure of the Surveyor General to list and of the Secretary of the Interior to patent the tract can have no effect upon the situation, for a patent was not necessary to pass the title. *Wilcox* v. *Jackson*, 13 Pet. 498; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Reichart* v. *Felps*, 6 Wall. 160; *Langdeau* v. *Hanes*, 21 Wall. 521; *Ryan* v. *Carter*, 93 U. S. 78; *Morrow* v. *Whitney*, 95 U. S. 551; *Whitney* v. *Morrow*, 112 U. S. 693.

II. But the claim of the plaintiff rests upon even more certain foundation. It is submitted with the utmost confidence that independently of any question of prior identification, the plaintiff had the right, by parol testimony, to prove the character of the tract in question at the date of the swamp grant and thus identify it as a piece or parcel of land which passed to the State, under said grant, on the 28th day of September, 1850.

The field-notes of the survey and the annotation made upon the township plat in the Surveyor General's office were an adjudication as to the character of the land ; or, upon the contrary, they were not. If they were such an adjudication, then the tract is already identified and title to it vested in 1850. If they are not such an adjudication, then, in respect of this tract, the Secretary of the Interior has utterly failed to make the identification required by the act, and it is competent for the State or her grantee to do so by parol testimony in any court and in any form of proceeding where it may be material.

This question is by no means a new one in this court. On the contrary, it has repeatedly arisen, and the court has uniformly recognized this right to resort to parol testimony,

under the circumstances stated.   In at least three well-considered cases this doctrine has been positively and directly declared to be law.' *Railroad Co.* v. *Smith,* 9 Wall. 95 ; *French* v. *Fyan,* 93 U. S. 169 ; *Wright* v. *Roseberry,* 121 U. S. 488. (See also *Martin* v. *Marks,* 97 U. S. 345.)

Here are three decisions of this court fully recognizing the proposition that parol evidence is admissible to identify lands falling within the swamp grant.   In *Railroad Co.* v. *Smith* that was the sole and only question presented, and there is no distinction or difference whatever between that case and the case at bar, except that in the former the testimony was offered for the defendant instead of the plaintiff in ejectment. In *French* v. *Fyan* the general doctrine is ' again clearly announced, and in *Wright* v. *Roseberry* the principle is reiterated with emphasis after elaborate consideration and discussion of every authority bearing on the subject.

The doctrine thus announced and upon which we rely is that where the Secretary has neglected or failed, under the provisions of the second section of the act of 1850, by some legal or proper method to identify a tract of land which, as matter of fact, was swamp and overflowed in 1850, it is competent for the State or its grantee, in any forum and in any form of action where it may be material, to establish the real fact by parol testimony and thus identify land as inuring to the State under the grant.   This, we submit, is the clear doctrine of the above authorities and conclusive of the question at bar.

We do not deny the general proposition that the Secretary of the Interior was created, by the act of 1850, a special tribunal with jurisdiction to determine the character of the lands to inure to the State under that grant, and that when he has once finally acted upon a particular case, duly and properly presented, his decision is conclusive as a finding of fact.   This is undoubtedly the law, no matter whether the field-notes were accepted or not as a basis of adjudication, and no matter what character or class of evidence was submitted to and considered by him.   But we do insist that when in respect to a particular tract the Secretary has never so acted ; or where he

has refused or neglected to so act; or where, from circumstances other than those affecting the character of the land, he is deprived of the power to act, then the State, whether she has accepted the field-notes or otherwise, is entitled, in judicial proceedings, wherever material, to show the character of the land by parol evidence.

*Mr. T. L. Chadbourne* and *Mr. Ashley Pond* for defendant in error.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

The plaintiff has assigned for errors (1) that the trial court improperly excluded the oral evidence offered to show that the demanded premises were in fact swamp lands when the act of September 28, 1850, was passed; and (2) that the court should have directed a verdict for the plaintiff instead of for the defendant.

In support of the first proposition, the plaintiff in error relies upon the case of *Railroad Company* v. *Smith,* 9 Wall. 95, in which oral evidence was admitted to establish the fact that the parcel of land there in dispute was swamp and overflowed land at the date of the swamp land act. But in that case there was no selection or identification of the land under either the swamp land act, or under the subsequent grant for railroad purposes. The selection and identification under each of said acts was left open and undetermined when the respective titles, involved therein, were acquired. It also further appeared in that case that the State neither made any selection of the lands granted for railroad purposes, nor conveyed to the railroad company any particular lands, but simply assigned or transferred generally the lands granted to the State by Congress, which were at the time only a "float," requiring identification and selection to make the grant operative to pass title to any portion of the public domain.

The facts of the present case present the direct converse of the situation which existed in the case of *Railroad Company*

v. *Smith.* But aside from this, the rule as to oral evidence, recognized in that case, was afterwards explained, and limited in its operation to cases in which there had been non-action or refusal to act on the part of the Secretary of the Interior in selecting lands granted, as appears in the subsequent cases of *French* v. *Fyan,* 93 U. S. 169, 173, and *Ehrhardt* v. *Hogaboom,* 115 U. S. 67, 69, where parol evidence was offered to show that patented lands were not of the character described.

In *French* v. *Fyan,* the court, speaking by Mr. Justice Miller, said in reference to such evidence: "The case of *Railroad Company* v. *Smith,* 9 Wall. 95, is relied on as justifying the offer of parol testimony in the one before us. In that case, it was held that parol evidence was competent to prove that a particular piece of land was swamp land, within the meaning of the act of Congress. But a careful examination will show that it was done with hesitation, and with some dissent in the court. The admission was placed expressly on the ground that the Secretary of the Interior had neglected or refused to do his duty; that he had made no selection or lists whatever, and would issue no patents, although many years had elapsed since the passage of the act. The court said: 'The matter to be shown is one of observation and examination; and whether arising before the Secretary, whose duty it was primarily to decide it, or before *the court whose duty it became, because the Secretary had failed to do it,* this was clearly the best evidence to be had, and was sufficient for the purpose.' There was no means, as this court has decided, to compel him to act; and if the party claiming under the State in that case could not be permitted to prove that the land which the State had conveyed to him as swamp land was in fact such, a total failure of justice would occur, and the entire grant to the State might be defeated by this neglect or refusal of the Secretary to perform his duty. There is in this no conflict with what we decide in the present case, but, on the contrary, the strongest implication, that if, in that case, the Secretary had made any decision, the evidence would have been excluded."

In the case of *French* v. *Fyan* it was held that, while the swamp land grant was a grant *in præsenti* by which the title

to such lands passed at once to the State in which they lay, it was made the duty of the Secretary of the Interior to identify them, make lists thereof, and cause a patent to be issued therefor, and that the patent so issued could not be impeached in an action at law by showing that the land which it conveyed was not in fact swamp and overflowed land, as the plaintiff in that case sought to do.

In the subsequent case of *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, 68, 69, the plaintiff deraigned title through a patent of the United States for the demanded premises, bearing date June 10, 1875, which was given in evidence, while the defendant claimed that twenty acres thereof were swamp and overflowed lands which passed to the State of California under the act of Congress of September 28, 1850, and offered parol evidence to establish this fact, but the evidence was rejected. It did not appear in that case that the demanded premises formed a part of any land selected by the State or claimed by her as swamp and overflowed land. In that case this court held, speaking through Mr. Justice Field, that "a patent of the United States, regular on its face, cannot, in an action at law, be held inoperative as to any lands covered by it, upon parol testimony that they were swamp and overflowed, and, therefore, unfit for cultivation, and hence passed to the State under the grant of such land on her admission into the Union"; and after citing and approving the decision made in *French* v. *Fyan*, above cited, proceeded as follows : "In that case parol evidence to show that the land covered by a patent to Missouri under the act was not swamp and overflowed land, was held to be inadmissible. On the same principle, parol testimony to show that the land covered by a patent of the United States to a settler under the preëmption laws was such swamp and overflowed land must be held to be inadmissible to defeat the patent. It is the duty of the Land Department, of which the Secretary is the head, to determine whether land patented to a settler is of the class subject to settlement under the preëmption laws, and his judgment as to this fact is not open to contestation in an action at law by a mere intruder without title. As was said in the case cited of the patent to

the State, it may be said in this case of the patent to the preemptioner, it would be a departure from sound principle and contrary to well-considered judgments of this court to permit, in such action, the validity of the patent to be subjected to the test of the verdict of a jury on oral testimony."

Nothing that was said or involved in *Wright* v. *Roseberry,* 121 U. S. 488, where the subject of these grants was exhaustively considered by the court, is in conflict with the rulings announced in these cases. In *Wright* v. *Roseberry*, patents for lands had been issued to the defendants, or their grantors, by the United States, under the preëmption laws, upon claims initiated subsequently to the swamp land grant to the State, and it was held that such patents were not conclusive at law as against the parties claiming under the latter grant, and that in an action for their possession evidence was admissible to determine whether or not the lands were in fact swamp and overflowed at the date of the swamp land grant, and that if proved to have been such the rights of subsequent claimants, under other laws, would be subordinate thereto. In that case the lower court held that the title to the demanded premises never vested in the State for want of a certificate by the Department of the Interior that they were swamp and overflowed lands, and that the State could not make title to the plaintiff upon which he could maintain an action of ejectment against persons in possession under a patent of the United States. This principle was denied by this court in an elaborate opinion announced by Mr. Justice Field, fully reviewing all the decisions on the subject, who said, p. 509, that "the result of these decisions is, that the grant of 1850 is one *in præsenti,* passing title to the lands as of its date, but requiring identification of the lands to render the title perfect; that the action of the Secretary in identifying them is conclusive against collateral attack, as the judgment of a special tribunal to which the determination of the matter is intrusted; but when that officer has neglected or failed to make the identification it is competent for the grantees of the State, to prevent their rights from being defeated, to identify the lands in any other appropriate mode which will effect that object. A resort to such

mode of identification would also seem to be permissible, where the Secretary declares his inability to certify the lands to the State for any cause other than a consideration of their character."

Under the principle announced in that case, and under the foregoing facts in the present case, it would seem that there had been such affirmative action on the part of the Secretary of the Interior in identifying the lands in this particular township, containing the lands in controversy, as would amount to an identification of the lands therein, which pass to the State by the swamp land grant, and that the selection by the State of the demanded premises under the canal grant of 1852, with the approval of the Secretary of the Interior, and the certification of the department to the State that they were covered by the latter grant, may well be considered such an adjudication of the question as should exclude the introduction of parol evidence to contradict it. The exclusion of the land in dispute from the swamp lands, selected and patented to the State, and its inclusion in the selection of the State as land coming within the grant of 1852, with the approval of such selection by the Interior Department and the certification thereof to the State, operated to pass the title thereto as completely as could have been done by formal patent, *Frasher* v. *O'Connor*, 115 U. S. 102; and being followed by the State's conveyance to the canal company, presented such official action and such documentary evidence of title as should not be open to question by parol testimony in an action at law. Under the facts of this case we are of opinion that the plaintiff in error could not properly establish by oral evidence that the land in dispute was in fact swamp land, for the purpose of contradicting and invalidating the department's certification thereof to the State and the latter's patent to the canal company.

But assuming that this parol testimony offered by the plaintiff in error was competent, and that it would have established that the land in controversy was swamp land that passed to the State by the act of 1850, what then would be the rights of the parties to this suit, under their respective

patents from the State? Can it be maintained that, because the State acquired title thereto under the act of 1850, its patent therefor to the canal company made in 1855 would be over-reached and superseded by its subsequent patent to the plaintiff in 1887? We are at a loss to understand upon what principle this can be asserted, for, even conceding that the State, in patenting the demanded premises to the canal company, acted under mistake or misapprehension as to the character of the land so conveyed, still so long as that patent remains uncancelled and unrevoked by the State, it must be held that its legal effect was and is to pass whatever title the State had to the tract in question, however that title may have been originally acquired by the State.

In the cases relied upon by the plaintiff in error there had been no particular lands conveyed by the State under grants subsequent to the act of 1850, and there was no presumption of law or fact that its patent was intended to convey lands which accrued to it under the swamp land grant. But in the case under consideration, even assuming that the State's title was acquired under the latter grant, it had a title for any and all purposes to which it might choose to apply or devote the property, and when it applied it to the purpose of constructing the canal, and actually conveyed it to the canal company, it was not in a position thereafter, so long as that conveyance remained in force, to transfer the same land to another purchaser.

It is well settled that the State could have impeached the title thus conveyed to the canal company only by a bill in chancery to cancel or annul it, either for fraud on the part of the grantee, or mistake or misconstruction of the law on the part of its officers in issuing the patent, and until so cancelled or annulled it could not issue to another party any valid patent for the same land. *United States* v. *Hughes*, 11 How. 552; *Hughes* v. *United States*, 4 Wall. 232; *Moore* v. *Robbins*, 96 U. S. 530. This is also the view taken of the question in *Michigan* v. *Flint and Père Marquette Railroad*, 89 Michigan, 481, 494. In that case the prior patent of the State was held to estop it from subsequently asserting title to

the parcel of land conveyed, while its patent for the same land was outstanding. But whether there is any technical estoppel in the ordinary sense or not, it cannot be maintained that the State can issue two patents, at different dates, to different parties for the same land, so as to convey by the second patent a title superior to that acquired under the first patent. Neither can the second patentee, under such circumstances, in an action at law be heard to impeach the prior patent for any fraud committed by the grantee against the State, or any mistake committed by its officers acting within the scope of their authority, and having jurisdiction to act and to execute the conveyance sought to be impeached.

The patent to the canal company is not shown to be void, because the State acquired title to the parcel in question, if it did so acquire it, under the swamp land grant, rather than under the act of 1852. Neither the State nor its subsequent patentee is in a position to cancel or annul the title which it had authority to make, and which it had previously conveyed to the canal company. The patent to the canal company did not on its face, or by its terms, purport to convey only such lands and such title as the State was entitled to under the grant of 1852. On the contrary, it conveyed by accurate description the particular tract or parcel of land in controversy. It is, therefore, wholly immaterial under which of the two Congressional grants the State acquired its title to said lands.

The canal grant of 1852 did not by its terms make the State a trustee, in any proper sense of the word, in reference to the lands granted by that act; but if it did, the State, as a trustee, made the selection of the lands covered by that grant, and in that selection included the particular parcel in question, and thereafter conveyed it to the canal company; and having full authority to so appropriate it, even if the title had previously accrued to it under the swamp land act of 1850, its conveyance of the same to the canal company for a full and adequate consideration cannot, upon any well-settled principle, be held void either as to the State or any subsequent grantee from the State. So that, independently of any question arising upon the action of the court in excluding the parol evi-

dence to show that the premises in controversy were, in fact, swamp land, it is clear, that under the facts in this case, the defendant has shown a superior title to such premises, and that the court below was correct in directing a verdict for it.

Our conclusion, therefore, upon the whole case is that the judgment below should be                    *Affirmed.*

MR. JUSTICE FIELD did not hear the argument in this case or take any part in its decision.

MR. JUSTICE BROWN, being interested in the result, did not sit in this case and took no part in its decision.