LAND, J.
This is a petitory action to recover a tract of land containing 80 acres, *848 with the buildings and improvements thereon situated in the parish of Avoyelles.
Defendants set up title, and also pleaded the prescriptions of 10 and 30 years. There was judgment in favor of defendants, and plaintiff has appealed.
On August 15, 1859,.the state of Louisiana issued a patent to Jules Desfosse to several tracts of land, described as “swamp” land, containing 278.33 acres, among which was included the E. y2 of N. W. % of section 26, township 1 S., of range 4 E., Southwestern district, state of Louisiana.
On October 23, 1S75, Jules O. Desfosse made a dation en paiement unto his wife, Mrs. Celestine Bordelon, for the purpose of reimbursing the sum of $6,761.70, representing paraphernal property received and used by the husband. A number of tracts were conveyed including the E. y2 of N. W. % of section 26, township 1 S., range 4 E.
On November 14, 1885, Mrs. Celestine Bordelon widow of Jules C. Desfosse, sold the last-described tract to Joseph 0. Saucier, on terms of credit. This sale was however rescinded and the land retroceded to the vendor on December 6,1887, for the reason recited in the act .as follows, to wit:
“And from an examination of the records it appears that the land herein mentioned did not belong to the said Jules C. Desfosse and the sale thus made was null and void.
On April 11, 1903, the plaintiff purchased at a probate sale made in the succession of Celestine Bordelon, widow of Jules C. Desfosse, the following described property to wit:
“A certain tract or parcel of land, situated in this Parish containing eighty (80) acres, bounded North by Callegari, South by Chou-pique with the improvements thereon.”
On the part of the defendant it is shown that the property in controversy was inventoried as belonging to one Zenon Lemoine and was purchased at a probate sale made in his succession on November 3, 1856, by Paul H. Dueote. The purchaser took actual possession of the land, and was living on it at the time of his death in 1868. The evidence shows that Dueote in 1867 mortgaged this same tract of land to L. D. Coco, and that the latter, in May, 1869, petitioned the probate court for an order directing the administrator of the estate of Dueote to sell said property at public auction for the purpose of paying the debt secured by the mortgage in due course of administration. The probate court ordered all the property belonging to the succession to be sold for cash according to law.
In 1870 the parish judge rendered the following order in the matter of the petition of L. D. Coco v. Avit Dueote, Adm’r, to wit:
“In this cause the defendant having complied with plaintiff’s demand since the filing thereof, it is therefore ordered, adjudged, and decreed that his suit be dismissed at defendant’s costs.”
The administrator’s final account and tableau of distribution shows the amount realized from the probate sale, and that after paying the homestead claim of the widow and minors there remained the sum of $33.40 to be applied to the special mortgage in favor of L. D. Coco. The evidence shows that the process verbal of sale once existed, and that it recited the adjudication to L. D. Coco, but since 1885 has been lost or destroyed.
The secondary evidence also shows that the land in dispute was adjudicated to L. D. Coco. One witness testified that L. D. Coco paid the widow Dueote a considerable sum in specie. The evidence leaves no reasonable doubt that the purchaser went into possession, and that he and his heirs have continued in possession ever since.
The recorded deeds show that L. D. Coco, on September 20, 1877, conveyed the property to his wife in payment of her paraphernal claims, and that Mrs. Coco, in the year 1880, donated the same property to the defendant herein. It is admitted that the property in question was assessed to L. D. Coco from the *850 time he acquired the same until his death, and was thereafter assessed to his estate.
In 3885, when Saucier purchased from Mrs. Desfosse, he was the tenant of the Cocos, who brought suit at once against him for rent. Before this suit could be tried Saucier retroceded the property to Mrs. Desfosse and voluntarily paid the rent to the Cocos.
In 1900 one Artigo was • on the land as lessee of the Cocos, and while their tenant made another contract of lease with one Seiss, administrator of the succession of Mrs. Desfosse. Seiss testified that in the year 1899, he discovered that the Cocos had possession of the property and collected rent, and that Artigo was on the premises.
The next spring Seiss entered into a contract of lease with Artigo. A. D. Coco, who had charge of the property, testified that Artigo was occupying the premises under a contract of lease, and that he had never heard of the contract of lease between Artigo and David Seiss.
It appears that soon after the sale to Saucier, in 1885, counsel for the parties in interest investigated their respective title and arrived at the conclusion that Mrs. Desfosse had no title to the land. At the time, according to the testimony of A. D. Coco, there was found among the papers left by Zenon Lemoine a United States land receipt covering the property in controversy. This paper was examined by counsel for the respective parties, and was exhibited to the notary before whom was executed the act of retrocession from Saucier to Mrs. Desfosse.
It is certain that Mrs. Desfosse was convinced that she had no title to the property, since she so declared in the act of retrocession. She never afterwards claimed title to the land and it was excluded from the inventory of her succession made in 1896. In 3902 the property was placed on a supplemental inventory.
Plaintiff has shown no title in the state, either in the usual mode of proving that the land was listed to the state, and approved by the Secretary of the Interior, or by showing that the land was in 1849 and 1850 in the category of swamp and overflowed lands and that the United States Band Department had neglected or failed to make the identification as required by the statutes. Wright v. Roseberry, 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039; Chandler v. Calumet & Hecla Mining Co., 149 U. S. 79, 13 Sup. Ct. 798, 37 L. Ed. 657.
It is established by the evidence that the defendants and their authors have been in actual possession of the land as owners since 1856. The possession of Ducote and his succession continued until the sale to> L. D. Coco in 18C9.
The possession of Ducote was transferred to L. D. Coco and the sum of both possessions passed from him to Mrs. Coco, and from her to tlie defendants, who have held possession in their own right since 1880.
Defendants are in possession in good faith under a recorded deed, and their title cannot be affected by the nonregistry of the anterior conveyance to L. D. Coco. See Hollingworth v. Wilson, 32 La. Ann. 1012. If their title cannot be affected neither can their right of possession derived from the same source.
We think that Ducote acquired title by the prescription of 10 years prior to the probate sale in 1869, and, if not, that his possession added to that of L. D. Coco, completed the term long before the sale to Mrs. Coco in 1877. If the sale to Coco did not affect third persons, the possession continued in the estate of Ducote. There was no pretense of the interruption of possession until 1885, 'when Mrs. Desfosse conveyed the property to Saucier, who was at the time a tenant of Coco’s. Saucier having commenced his possession of the estate for the defendants could not change the character of his possession. Civ. Code, art. 3446. A tenant cannot dis *852 pute Ms lessor’s title while in possession of the leased premises. Town of Morgan City v. Dalton, 112 La. 9, 36 South. 208; Harvin v. Blackman, 112 La. 24, 36 South. 213. For the same reasons the surreptitious lease of 1900 to Artigo was without legal effect as an ouster of defendant’s possession.
Considering the sale from 1856 to 1880, inclusive, as having merely the effect of transferring the right of possession as owner; the result is an adverse possession of nearly 48 years opposed to a claim of title, which more than 20 years ago the author of plaintiff solemnly acknowledged in an authentic act to be a nullity.
Hence, if defendants have not acquired title by the prescription of 10 years, they can successfully invoke the prescription of 30 years.
Judgment affirmed.