LAND, J.
On March 13, 1893, Theophilus Blackman sold to Marion Harvin, a negro, 200 acres of unimproved bottom land situated in the parish of Red River. The price was $1,280.80, payable on a credit, and evidenced by six notes maturing from year to year, and bearing 8 per cent, interest from date.
The purchaser took possession of said *25 tract of land and made improvements tliereon.
On January 9, 1899, the purcliaser retro-' ceded the property for the purported consideration of $1,200 in cash, and soon thereafter leased the place from Blackman for the years 1899, 1900, and 1901.
On November 5, 1900, Harvin sued Black-man to rescind said sale on the ground of duress, alleging that he had remained in fear of his life ever since the date of said .reconveyance. Harvin further alleged that there was no consideration for said sale, and prayed for the rescission of the same, and, in the alternative, for judgment against defendant for $1,200, with legal interest from January 9, 1899.
Defendant filed a plea of estoppel, bottomed on the alleged lease for three years, the payment of the rent for 1899 and 1901, and the continued possession of the plaintiff as lessee of defendant down to the time of the filing of the plea of estoppel.
The plea was sustained by the district judge, and plaintiff appealed to the Supreme -Court, which reversed the judgment of the district court, and reopened and remanded the case for trial on the plea and the merits.
Plaintiff filed an amended petition, alleging that he was compelled to sign not only the act of sale, but the rent notes and contracts of lease relied on by defendants by force, threats, intimidations, violence, etc., ■on the part of the original defendant, Black-man, who died pending the first appeal; and that he was forced to remain on said property and pay the rent notes.
In January, 1902, while the first appeal was pending in the Supreme Court, T. Black-man proceeded against plaintiff by rule to ■evict him from the leased premises on the grounds of the termination of the lease and the nonpayment of the rent for the year 1901. Harvin appeared by counsel, and pleaded the original suit pending in the Supreme Court as lis pendens.
R'or answer Harvin pleaded the general Is- I sue, averred that his signature to the lease was obtained by fear, threats, and duress, and that plaintiff’s title was obtained by like means and fraud. Harvin annexed his petition in the original suit, and averred that all the allegations therein contained applied with equal force to the lease.
The plaintiff in rule proved up his case, and obtained judgment of eviction as prayed for. Defendant in rule offered the record of his original suit on the plea of lis pendens, but does not appear to have offered any evidence on the trial of the merits. This judgment was rendered January 17, 1902, and Harvin took a devolutive appeal, and filed his bond on January 8, 1903, returnable to Court of Appeal on the fourth Monday of January, 1903.
On November 11, 1901, Blackman sued Harvin on his lease note for $300 for the rent of the same year. On March 4, 1902, judgment by default was rendered in favor of Blackman for the amount sued for, with recognition of his privilege as lessor on the property provisionally seized. On January 8, 1903, Harvin took and perfected an apijeal from this judgment returnable to the Court of Appeal on the fourth Monday of January, 1903.
Defendants pleaded the judgment in the ejectment suit as res judicata as to the issues presented in the amended petition. This plea was overruled.
The answer is a general denial, with a special averment that the deed of reconvey-' anee was executed by plaintiff of his own free will, and in due course of business. The answer further avers that at the date of the institution of this suit plaintiff was in possession of the property in dispute as lessee of defendant as shown by the record and judgment in the two suits already referred to, and defendant pleads the two judgments as res judicata, and renews his plea of estoppel founded on said possession as lessee.
*27 The answer denies all of plaintiff’s allegations as to fear, violence, and duress.
The case was tried on the merits, and the district judge handefl down an opinion in which he reviewed the evidence.
His conclusion was that the signature of plaintiff to the deed of January 9, 1899, was obtained by duress. This conclusion was reached by giving full credit to plaintiff’s testimony and discrediting the adverse witnesses for the defense. The judge, referring to plaintiff’s testimony, said: “But the testimony in this respect is flatly contradicted by Mrs. Blackman, the wife of the defendant, who was present during the interview between the plaintiff and her husband; by Miss Mollie Blackman, a daughter of the defendant, who was at the house when the interview was had; by the witness Smith, apparently a friend of the Blackman family, who was present a part of the time; and on less material points by Wimberly, the two Stephenses, and Tippett.”
The judge held that plaintiff’s testimony was corroborated by independent facts and circumstances, was more natural and reasonable, and more consistent with what men knew by experience and observation.
The facts stated in the opinion may be summarized as follows:
Plaintiff owned the property by . a title which, though unrecorded, was good against the defendant, and the property was worth at least $2,500, and probably $4,000.
Plaintiff had paid a considerable portion of the price, and a merchant had promised to advance money to pay the remainder.
Plaintiff had been assured by a responsible attorney that his title was good, and he could hold the property.
That under these conditions plaintiff went to Blackman’s house in response to a message from Mrs. Blackman; remained there from Sunday morning until Monday morning, spending the night in the room occupied by Blackman and wife.
That on Monday morning plaintiff, accompanied by Blackman and Smith, went to a neighbor’s house, and signed a deed transferring the property to Blackman for $1,200, not a cent of which he received.
“That after signing the deed he came to the town of Coushatta, still accompanied by Blackman and his friend Smith, paid Mr. Wilkinson a small fee for advising him in relation to the property, and, without giving the attorney any reason for so doing,, put an end to the matter in regard to maintaining him in possession of the property about which he had consulted him a short time previously.”
That several months afterwards, Harvin complained to responsible white citizens of his alleged wrong at the hands of Blackman, and later filed the present suit, detailing those wrongs and challenging defendant to a public trial.
The judge refers to the following corroborating facts:
The offer of Blackman to give Booth $40 to run plaintiff off the land. This was after this suit was filed. His declaration to the same person at the same time that when a white man sold a negro river land he did not intend that the latter should pay for it.
The fact that plaintiff remained 24 hours at Blackman’s house, spending the night in the same room occupied by Mr. and Mrs. Blackman. The judge considers the latter circumstance extraordinary.
The further fact that the deed was signed then and there, though Blackman and Smith were going to Coushatta to pass another deed, and plaintiff accompanied them.
The failure of the defendant to produce the books of Blackman to corroborate the testimony of Mrs. Blackman that plaintiff owed her husband $1,200 for supplies and money expended on the land.
As to the lease the district judge states that it was consented to, according to Smith’s testimony, while the parties were on the
*29 road to Ooushatta, and while plaintiff was little better than a prisoner.
The opinion continues as follows:
“Whether or not there was a sufficient show of force on the part of Blackman on this occasion to overcome the will of the plaintiff is not entirely clear, but the plea ought not to prevail for another reason.
“It is clear that after this lease was made Blackman violated it in the most flagrant manner, and attempted, as he confessed to the witness Booth, to run the plaintiff off the place. I am satisfied that the story of Harvin having insulted Mrs. Blackman was an invention pure and simple, resorted to by Blackman for the purpose of securing -the assistance of some of the citizens in that locality in the attempt to get rid of the victim whom he had despoiled.
“It seems to me that it would be monstrous to permit the defendant to successfully plead as an estoppel a contract which he had thus repudiated. ‘He who seeks equity must do equity.’ The plea is therefore overruled.
“The exception of res judicata must share the same fate as the plea of estoppel.
“At the time it was filed the 12 months allowed for a devolutive appeal from the judgment on which it was predicated had not expired.
“A suit pending on appeal, or from which an appeal may be taken, does not form res adjudicata. Hennen’s Digest, vol. 1, page 761, No. 3, and authorities cited. The case' of Escurix v. Daboval, 7 La. 577, is directly in point.”
The rent notes were executed five days after the sale of January 9, 1899, and we find in the transcript a lease agreement of date November 17, 1899, signed by “Marion Harvin.”
A consideration of the pleas filed in the court a qua comes first in logical order. When the present suit was filed on November 5, 1900, plaintiff was in possession of the premises as lessee of Blackman.
When the plea of estoppel was filed, plaintiff was in possession of the leased premises. The judgment of eviction was of a later date.
Plaintiff, in his original petition, did not refer to the lease, but prayed to be restored to the quiet possession of the property. He did not assail the lease until October 27, 1902, when his amended petition was filed. The judgment evicting him as the tenant of Blackman was signed January 17, 1902, and the judgment against him for the rent price of 1901 was signed March 4, 1902.
The lower court disposed of these judgments by stating that they were not res judicata, because the delay for taking a devolutive appeal had not expired.
If not strictly res judicata, they were lites pendentes, and precluded any further action by the court on the matters litigated; the sole remedy of the party cast being by appeal. Trescott v. Lewis, 12 La. Ann. 197.
Where the same cause of action is pending in courts of concurrent jurisdiction, and there is no plea of lis pendens, the first judgment rendered is valid and executory against the party east in the action, and all proceedings must be stayed in the other suit. Bourgeois v. Jacobs, 45 La. Ann. 1314, 14 South. 68.
In the eviction suit plaintiff pleaded that his signature to the lease was obtained “by fear; threats, and duress.”
He offered no evidence to support these averments, and on January 17, 1902, judgment of eviction was rendered against him as tenant of Blackman. On October 27, 1902, plaintiff raised the same issue in his amended petition. He took no' appeal from the two judgments rendered against him until January 8, 1903 — a legal holiday, on which no judicial proceedings could be had. The record does not advise us what became of these appeals.
That plaintiff occupied the premises during 1899 and 1900 as tenant of Blackman, *31 and paid the rent for those years, is not disputed.
It is well settled that a tenant cannot be perr&itted to dispute his lessor’s title as long as he continues in possession. Hanson v. Allen, 37 La. Ann. 732.
In Rector v. Gibbon, 111 U. S. 284, 4 Sup. Ct. 608, 28 L. Ed. 427, the court said:
“The contract of lease not only implies a recognition of his title, but a promise to surrender the possession to him on the termination of the lease. .They, therefore, while retaining possession, are estopped to deny his rights.”
It follows that plaintiff, being in possession as lessee when this suit was filed, is estopped to deny his lessor’s title and rights of possession.
We are constrained to dismiss this suit as premature, and not maintainable, under the state of facts which existed at the time it was instituted. We do so with less hesitation because the record does not advise us of the result of the two appeals taken by plaintiff from the judgments in favor of Blackman as lessor, which we consider as important factors in the case.
It is therefore ordered, adjudged, and decreed that the judgment of the district court be reversed, and it is now ordered that this suit be dismissed as in case of nonsuit; plaintiff to pay costs of both courts.