LAND, J.
This suit is a sequel to two others between the same parties which have been before this court. See Harvin v. Black-man, 108 La. 426, 32 South. 452; Id., 112 La. 24, 36 South. 213.
Through all three of these cases runs the demand to annul and rescind a certain sale of real estate on the ground of duress, which is met by a plea of estoppel based on the relation of landlord and tenant between the parties. On the first appeal the cause was-remanded, with leave to amend. 108 La. 426, 32 South. 452. Plaintiff amended, by alleging that the lease also was obtained by duress, and that he was forced to remain on the property and pay the rents.. The case was finally nonsuited on the ground! that a tenant cannot be permitted to dispute his lessor’s title as long as he contin *434 ues in possession. 112 La. 24, 36 South. 213.
Thereafter Marion Harvin instituted the present suit, involving the same issues, against the legal representatives of Black-man, coupled with a demand for the dissolution of the sale for nonpayment of the price. The plaintiff having died, the suit was revived in the name of his administratrix. The defendant pleaded the general issue, estoppel, and res judicata. There was judgment in favor of the plaintiff, annulling and rescinding the sale on the ground of duress. Defendants have appealed.
In March, 1893, Harvin purchased from Blackman a tract of land in the woods, containing about 200 acres. The sale was for $1,-230, payable in six equal annual installments, with 8 per cent, interest from date. Harvin cleared a considerable portion of the tract, and erected buildings and improvements thereon. He cultivated the cleared land on his own account until January, 1899, when he retroceded the whole tract to Black-man for the purported price of $1,200 cash in hand paid. A few days after the sale Harvin executed rent notes in favor of Blackman for three years. On November 5, 1900, Harvin filed his first suit to rescind the sale, while still in possession as lessee. On November 11, 1901, Blackman sued Harvin for $300 on his rent note for 1901, and provisionally seized property on the leased premises. Harvin made no defense, and judgment was rendered against him in default in March, 1902. On January 1, 1902, Blackman, the lease having expired, brought suit to evict Harvin from the premises. For answer Harvin admitted signing the lease, but averred that his signature to same was obtained by fear, threats, and duress, and for answer pleaded all the allegations in his suit to rescind the lease. On January 17, 1902, judgment was rendered in favor of Blackman, ordering Harvin to surrender the leased premises, and in default of his so doing ordering that a warrant issue to the sheriff commanding him to put the plaintiff in full possession of the premises. Harvin appealed from the judgment in both suits to the Court of Appeal.
Both appeals were dismissed in February, 1903.
Defendant pleads these two final judgments as estoppels and re's judicata.
In the first suit no defense was made. The case was tried on default, which is equivalent to a plea of the- general issue.
In the second suit the special defense was made that the signature to the lease had been obtained by duress, and all the allegations contained in the petition in the suit to rescind the sale were pleaded as applicable with equal force to the lease. The judgment rendered concluded these defenses as far as the lease was concerned. It is argued that, as no evidence was offered to prove the special defense, the issue thus raised was not adjudicated. The issue raised by the answer impeached the validity of the lease sued on; Harvin contending that his signature thereto had been obtained by threats, force, and duress. This issue was certainly concluded by the adjudication that the lease was, valid.
The failure of a defendant to offer evidence in support of a special plea or defense cannot affect the binding effect of the judgment on the issue before the court.
A special defense to the demand of the plaintiff cannot, in the nature of things, be considered as a separable issue in the ease.
“If a party fails to prove a fact he might have proven, the law can afford him no relief.” Black on Judgments (2d Ed.) vol. 2, § 754.
A valid judgment for the plaintiff definitely and finally negatives every defense that might and should have been raised against the action in every subsequent pro *436 ceecling between, the parties, whatever the cause of action. Id.
“Fraud, tainting the plaintiff’s cause of action, is a defense which the defendant is bound to set up when he has opportunity to do so; and, if he neglects to avail himself of this means of defeating the claim made against him, he will be precluded by the judgment from afterwards alleging such'fraud.” Id. § 757.
See, also, Howcott v. Pettit, 106 La. 530, 31 South. 61; Lindquist v. Land & Lumber Co., 112 La. 1030, 36 South. 843.
The same writer says that a judgment rendered in a summary proceeding to evict a tenant concludes—
“questions as to the existence and validity of the lease, its alleged cancellation or renewal, the amount of rent in arrear, and the landlord’s right to regain possession.” Id. § 661a.
The lease in question was made shortly after the sale of the property to Blackman, and the two judgments against Harvin conclude him and his legal representatives from disputing the validity of such lease on the ground of duress.
Harvin occupied and cultivated the place under this lease for three years at an annual rental of $300, and paid without objection the rent for the first two years.
The lease, being valid, necessarily operated a recognition and ratification of the title which the lessor had previously acquired from the lessee. A voluntary execution of an obligation is equivalent to a ratification. Rev. Civ. Code, art. 2272 (2252). In Landry v. Connely, 4 Rob. 127, it was held that under this article an obligation null and void ab initio may be ratified or confirmed expressly or tacitly, verbally, in writing, or by acts manifesting clearly such an intention, or even, in some cases, by silence. In that case a lease, with full knowledge of the origin and nature of the lessor’s title. was held to be an acquiescence in and ratification of a judgment and sale, which divested the lessee of his original title. In Johnson v. Dunbar, 26 La. Ann. 188, the court said:
“Besides, the next year after the acquisition of his pretended title Johnson rented the land in controversy from the administrator of the succession of Crouch, thereby in effect conceding his want of title and acknowledging that of his adversary.”
In Jouet v. Mortimer, 29 La. Ann. 212, the court expressed the opinion that a mere offer to lease property sold at a judicial sale operated a recognition and ratification of the title.
“Engagements made through error, violence, fraud or menace are not absolutely null, but are voidable by the parties who have contracted under the influence of such error, fraud, violence or menace.” Rev. Civ. Code, art. 1881.
“No contract can be invalidated on an allegation of violence or threats, if it has been approved, either expressly after the violence or danger has ceased, or tacitly by suffering the time limit to elapse without causing it to be rescinded.” Rev. Civ. Code, art. 1855.
As the subsequent lease operated a recognition and acknowledgment of the title conveyed by the sale, it cannot be considered in any other light than an express approval of that contract. The word “tacitly,” as used in the article, means silence and inaction.
In none of the cases cited by plaintiff’s counsel was a subsequent lease relied on as a ratification of the sale. The doctrine that a lessee may dispute the lessor’s title after the termination of the lease has no application to the issues before us.
Conceding that plaintiff has the right to dispute the defendant’s title, such right avails nothing, unless he can avoid the sale in question on the ground of duress. Plaintiff confirmed his adversary’s title by leasing from him and by holding possession under the lease for nearly three years. If the lease was valid, the sale was ratified. The validity of the lease is a thing adjudged.
All the testimony in the case as to duress is immaterial. .We may, however, say *438 that the fact of duress, at the time of the sale and of the lease, rests on the testimony of the original plaintiff, which is contradicted by a number of witnesses. Black-man died before the trial, and consequently his version of the transaction was never given before the court.
The remaining question is the demand to annul the sale for the nonpayment of the purchase price. The sale from Blackman to Harvin was entirely on a credit. The price 'of $1,280 was represented by six notes, bearing 8 per cent, interest from date, and maturing from year to year. It was stipulated in the act that, if the notes were not paid punctually, the sale should be null and void. The last note for $240 matured on December 1, 1808. It was not paid punctually, and Blackman seems to have declared his intention to consider the sale as null and void. Harvin conceded that he owed about $300 for balance due on the purchase price of the property. He consulted an attorney about his rights, but before any action was taken Harvin visited Blackman’s house and had an extended conference with him. The result was a reconveyance of the land for the purported consideration of $1,-200, paid in cash. In fact, no money was paid. Thereafter Harvin leased the land and paid rents.
The testimony of Blackman’s widow is too vague and uncertain to show that Harvin owed any certain amount on the purchase price. The deed shows that Harvin agreed to sell the land for $1,200, and that Blackman agreed to pay that price. Evidence received without objection shows that the price was not paid. There is no sufficient evidence to show that the act was intended as a dation en paiement. The property was worth at the time at least $2,500, and it is not reasonable to suppose that Harvin agreed to surrender it for the small balance due on the price.
“If the buyer does not pay the price, the seller may sue for the dissolution of the sale.” Rev. Oiv. Code, art. 2561.
“The judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term does not exceed six months.” Rev. Giv. Code, art. 2562.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that this cause be remanded, with instructions that the judge below grant to the defendants a reasonable time, not exceeding six months, within which to pay to the plaintiffs the sum of $1,200, with legal interest thereon from the 9th day of January, 1899, until paid, and in default of such payment within the term fixed the judge below is further instructed to render judgment canceling the sale of lands from Marion Harvin to Theophilus Blackman, of date January 9, 1899, and duly recorded on January 10, 1899, in the recorder’s office of the parish of Red River; and it is further ordered that all other demands of the respective parties be reserved for future adjudication, and that defendants pay costs in the lower court, and that plaintiffs pay costs of appeal.
PROYOSTY, J., concurs.