Plaintiff leased from Charles A. Terrill the owner, a lot of land in the town of Ruston, Louisiana, at the southeast corner of Block No. 6 on Georgia and Vienna Avenues, with improvements thereon. The improvements *Page 681 
consist of a filling station. The lease is in writing and was registered in Lincoln Parish promptly after execution. It is dated October 21, 1935, and provides for a primary term of five years, beginning November 1, 1935, at a monthly rental of $18. Various stipulations common to a contract of this character are incorporated therein, of which the following is one: "Lessee has the option, on or before the expiration of the term of this lease, to renew the same for a period of five (5) years upon the same terms and conditions herein specified."
The right to sublet the premises and/or to assign or transfer the lease is specifically provided for.
On November 1, 1937, plaintiff subleased to defendant the property covered by the lease from Terrill for the annual rental of $216 payable $18 monthly in advance, beginning November 1, 1937. The contract contains these stipulations, to wit:
"This agreement shall be effective from and after the day and year first above written, and shall continue in effect for one year thereafter, and after such year, from year to year until one party shall have given 30 days' written notice to the other party of intention to terminate this agreement on the expiration of the then current yearly period. Such notice may be given during the first year, to be effective at the end thereof, or during any subsequent year, to be effective at the end of the then current year.
* * * * * *
"Lessor holds and owns lease on the above-described premises and Lessee agrees to abide by and comply with all the covenants and obligations contained in said lease executed by and between Charles A. Terrill, Lincoln Parish, Louisiana, Lessor, and Magnolia Petroleum Company, Dallas, Texas, Lessee, dated the 21st day of October, 1935."
Defendant has occupied the leased premises since this lease was signed.
On July 26, 1940, Terrill wrote plaintiff as follows: "I am this day notifying you that I no longer care to lease my Station at Ruston, La., operated by Mr. R.H. Carter. This is to take effect on Oct. 21, 1940, the expiration of your lease."
On August 6th, plaintiff replied:
"We have received your letter of July 26, 1940, regarding the lease that this Company holds covering your filling station property situated in Ruston, Louisiana.
"The lease agreement referred to contains, among its provisions, the following:
"`Lessee has the option, on or before the expiration of the term of this lease, to renew the same for a term of five years upon the same terms and conditions herein specified.'
"In writing your letter of July 26th, you apparently overlooked this portion of the lease agreement.
"We have concluded to renew this lease in accordance with said provision for a period of five years from the expiration of the stipulated term, i.e., October 31, 1940, and we now notify you of such renewal."
This letter was confirmed by another on September 25th.
On September 13, 1940, plaintiff addressed a letter to defendant in which reference is made to the lease between them, with special emphasis on the stipulation governing the right of either to terminate the contract and defendant was specifically advised and notified therein that:
"We beg to advise that this Company now avails itself of the right to terminate said lease contract, as accorded by the above quoted provision, and you are hereby notified that said lease will terminate and expire on October 31, 1940.
"We are exercising our option with the owner of this property to extend our lease for another five years, from and after October 31, 1940, and upon completion of this transaction, our representative will call upon you in regard to extension of your sublease."
Defendant did not pay the October rent on the first of that month, and on the 22d of the month plaintiff wrote him on the subject and therein referred to the fact that defendant had informed it of his intention to repudiate his lease agreement and hold adversely to plaintiff on and after October 21st. He was advised in this letter that:
"We have a valid and subsisting lease on the property under consideration. For the reasons mentioned, you have breached the sublease contract between us, and said contract has been terminated by reason of such breach, and you are hereby notified to remove from and leave the leased premises."
Defendant did not vacate the leased premises and on October 29th this suit, an ejectment proceeding, was instituted to compel him to give up the property.
Defendant denies that he is the tenant or sublessee of plaintiff and avers that he *Page 682 
has not been so since October 21, 1940, the date, he avers, on which his sublease from plaintiff expired. He avers that since that date he has been the tenant or lessee of Terrill from whom he leased the involved premises in July, 1940, and to whom he has paid rents since October 21, 1940.
Defendant excepted to plaintiff's petition as disclosing no right of action. The exception was tried in advance of trial on the merits and overruled. Thereafter trial on the merits was had and plaintiff's demand was rejected. This appeal is prosecuted by it.
Appellee in this court narrows the issues to these: (1) That the lease between plaintiff and Terrill did not provide for renewal at end of primary term; (2) that plaintiff is without right of action against defendant to eject him from the leased property because defendant is now the lessee of Terrill, the owner.
We are convinced that neither contention is well founded.
The contract of lease between plaintiff and Terrill was executed in triplicate originals. It is on a printed form. One of the originals was mailed to Terrill, one was retained by plaintiff while the third was filed for registry. The stipulation giving the lessee the right to renew the lease for five years following expiration of the primary term embraces the last one and one-half lines of paragraph 10 of the lease. Paragraph 11 of the lease was entirely deleted therefrom by a series X's. These X's on the lease retained by plaintiff and on that which was filed for record do not touch the printed words of the renewal provision, but on the lease in Terrill's possession the X's were over-written horizontally on about one-half of the whole line of letters in said provision. This was due to the malposition of the blank lease in the typewriter as it was being filled in. All three originals were typed at the same time by use of carbons. It is not contended that it was the intention of the parties to delete this renewal provision from the contract and since the original filed and recorded is free from criticism on this score and really expresses the intention of the parties, this suffices to set at naught the first issue tendered by appellee.
The stipulation in the lease granting to plaintiff the option of renewing it for another five-year period is a covenant running with the title. Its registry provided constructive notice to all persons. The record shows that defendant really had actual notice thereof. The parties were competent to so contract and having thus contracted it became the law between them. The stipulation was an important element of the lease and evidently provided part of the consideration therefor. To plaintiff alone was accorded the privilege of giving vitality to the stipulation, and it did so.
When plaintiff advised Terrill, its lessor, that the option to renew was availed of by it, this action automatically brought about the renewal and continued the relation of landlord and tenant between them. Such stipulations are common to contracts of this character and have been held to be perfectly valid and binding when availed of. Lieuteaud v. Jeanneaud Cathalogne, 20 La.Ann. 327; Beuhler v. Palace Market Co., Inc., 148 La. 355, 86 So. 896.
When the renewal was thus made effective, defendant was the tenant of plaintiff and this relation subsisted until plaintiff elected to terminate it and gave notice of such intention in the manner provided by law.
The relation of landlord and tenant between plaintiff and Terrill not having terminated, the latter was wholly without right to validly lease the property to any one, especially to defendant whose occupancy was and is through contractual relation with plaintiff. The effort to circumvent plaintiff's right as original lessee and as lessor of defendant was wholly abortive in legal contemplation and to no extent did it work any alteration in the respective rights and obligations previously prevailing between the parties.
It is axiomatic that when a lessee subleases the res he becomes the lessor for the purposes of the sublease and to him accrues the same rights and privileges as would accrue if he had been the owner. A lease, it has been held, is a qualified alienation and for all legal intents and purposes, subject to its terms, a lessee becomes the owner of the thing affected by the lease and unless restrained by covenant, may effectively sublease the same to others. Civil Code, Art. 2725.
By a long line of decisions it has been uniformly held that so long as the relation of landlord and tenant subsists, the latter may not challenge the ownership of the former nor his right to lease the thing, the subject of the contract. From the very nature of such contracts this must *Page 683 
be true. It is sound and logical. The lessee is estopped and precluded from going out and procuring or attempting to procure rights in, to or on the object of the lease and then, while in possession, challenge the efficacy of the very contract which has served as the basis of his right of possession.
If the relation between the parties and the extraordinary rights vouchsafed to the lessor may be so easily frustrated and/or rendered nugatory, then, in any case, resort to such practice could well be capitalized by the lessee. Possession thereby could be indefinitely withheld from the owner and oft-times by an impecunious occupant.
This court in Federal Land Bank of New Orleans v. Spencer, 160 So. 175, had before it the very question involved herein. We held therein, as reflected from the syllabus: "In ejectment against tenant wrongfully holding over, tenant could not rely on lease from third person after first lease had expired by limitation (Civ. Code, art. 3446)."
Several cases supporting this principle are referred to and/or quoted from, including Rector v. Gibbon, 111 U.S. 276, 4 S.Ct. 605, 28 L.Ed. 427.
It was held in Ideal Savings Homestead Association v. Gould, 163 La. 442, 112 So. 40: "Possession of lessee is possession of lessor, and lessee, while holding possession, cannot question lessor's title, nor change character of possession, by possessing for himself, though lessee is real owner."
The principle is clearly and definitely affirmed in Harvin v. Blackman et al., 112 La. 24, 36 So. 213, wherein, according to the syllabus, it is held:
"1. A tenant cannot be permitted to dispute his lessor's title as long as he continues in possession. Hanson v. Allen, 37 La.Ann. 732.
"2. A contract of lease not only implies a recognition of the lessor's title, but a promise to surrender the possession to him on the termination of the lease. Hence a lessee, while retaining possession is estopped to deny his lessor's rights. Rector v. Gibbon, 111 U.S. [276], 284, 4 S.Ct. [605], 608, 28 L.Ed. 427."
Appellee cites and relies upon Gulf Refining Company of Louisiana v. Glassell et al., 186 La. 190, 171 So. 846. The case is not analogous. It was therein held that lessee under oil and gas lease was not entitled in his own name to maintain a petitory action against alleged trespassers on the property covered by the lease, even though lessor refused to institute such an action. In such circumstances, it was held, the lessee was relegated to a personal action against his lessor.
It being proven that the relation of landlord and tenant existed between plaintiff and defendant to and including the month of October, 1940, and defendant not having paid rent for that month after demand, plaintiff had the right to declare the lease at an end and to demand possession of the leased premises; and upon defendant's refusal to accede to the demand, resort to summary (ejectment) proceedings (Act 200 of 1936) was proper.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, Magnolia Petroleum Company, and against defendant, Richard H. Carter, ordering and commanding him, said defendant, to deliver to plaintiff possession of the leased premises involved in this suit and fully described in the petition; and, in all other respects, this case is remanded to the lower court for the execution of this judgment and the issuance of all orders needful to its enforcement.
Defendant is cast for all court costs.