BOLIN, Judge.
Plaintiff filed suit against defendants for $9,685.82 alleged to be due under a written lease. Of this amount, $1,143.02 represented past due rent; $8,542.80 as accelerated rent, interest and attorneys’ fees. Plaintiff alleged that defendants were non-residents and therefore obtained a non-resident writ of attachment under which certain property situated in the leased premises was attached. A curator ad hoc was appointed and notified both defendants of the action pending against them. Thereafter, the curator filed an answer to the suit.
The Shreveport Bank & Trust Company intervened in the proceedings, denying the principal allegations of plaintiff’s petition and further alleged it was the holder of a chattel mortgage covering the attached property which had been executed as security for a loan. The intervenor further alleged it had a pending foreclosure on its chattel mortgage. It resisted the demands of plaintiff on several specified grounds and sought to dissolve the writ of attachment and to recover $2500 as attorneys’ fees for dissolving such writ.
The judge below, in a written opinion,, denied intervenor’s demands and granted judgment for plaintiff as prayed for. From this judgment, Shreveport Bank & Trust Company has appealed. The curator ad hoc appointed by the court to represent the interests of the non-resident defendants has not appealed in behalf of defendants.
The trial on the merits disclosed the following circumstances which we will briefly relate. Prior to July 22, 1960, Mrs. Theople Galloway (then Mrs. Theople Richardson) together with her minor daughter owned a business known as Zip Reproductions. On that date, she, acting in her own behalf and for her minor daughter, by court order, sold the business and subleased the premises in which the concern was located to defendants. The area leased was located in the Shreveport Club building on Travis Street in Shreveport, Louisiana. Mrs. Galloway was not the owner of the property, but leased it *800 from Core Laboratories who in turn were lessees of the Shreveport Club. The property attached was on the premises at the date of the lease. Defendants, on the same day and acting as a partnership, granted a chattel mortgage covering most of the property attached to Shreveport Bank & Trust Company, and the same was recorded on July 25, 1960.
The evidence shows that Zip Reproductions was operated as a partnership between defendants until October 16, 1960. On that date, defendant W. C. Murphrey sold to defendant Alexander Levitt all of his rights in and to the assets of the partnership for $1.00 and the assumption of all-existing liabilities of said partnership. On March 17, 1961, Levitt, by letter, did “authorize Mrs. Theople R. Galloway to act as my legal representative in all business transactions concerning Zip Reproductions.”
The record further shows defendants paid only one installment under the lease and, at the time suit was filed, defendants owed $1,143.02 for rent and utilities from September, 1960 through April, 1961. The record further reveals that plaintiff gave ten days’ notice of her intention to accelerate the balance of the lease adding an indebtedness of $$,542.80, plus interest and attorneys’ fees as provided in the lease agreement.
Plaintiff notified defendants by registered letter directed to them at their respective out-of-state addresses and thereafter filed this suit and secured the accompanying attachment of the property involved. Shreveport Bank & Trust Company intervened and, after judgment in favor of plaintiff, appealed devolutively to this court.
Intervenor resisted the demands of plaintiff against defendants on the following grounds:
“(a) The indebtedness claimed by plaintiff was a partnership liability and the assets attached were partnership assets, but the partnership was not made a party to this proceeding.
“(b) The defendant W. C. Murphrey was not, and is not, a non-resident of the State of Louisiana, having established no domicile elsewhere.
“ (c) The defendant Alexander Levitt was not, and is not, a non-resident of the State of Louisiana, having established no domicile elsewhere.
“(d) The partnership known as Zip Reproductions had not been liquidated, was a necessary party to the suit, and was not named a defendant herein.
“(e) That Alexander Levitt did not leave the State of Louisiana without appointing an agent in Louisiana to represent him, but on the contrary, both by written and oral declarations of authority designated and authorized plaintiff, Mrs. Theople Galloway, to operate Zip Reproductions with plenary authority in all matters relative thereto, including the right to sell said business, sign and endorse checks and negotiable paper, and to receive all service of process relative to said business.
“(f) That at the time of filing this suit and issuing the writ of non-resident attachment herein plaintiff was in fact operating the business of Zip Reproductions as a going concern and was a legal agent for service of process thereon.
“That plaintiff is not the owner, and never has been the owner, of the premises leased to and occupied by the partnership known as Zip Reproductions, and plaintiff has no landlord’s lien or privilege upon the properties therein.”
Prior to a consideration of appellant’s contentions on the merits, it is necessary to determine whether these defenses to plaintiff’s demands can be asserted by in-tervenor. The pertinent provisions of the Louisiana Code of Civil Procedure, LSA defining the rights of intervenors provide:
Art. 1091.
“A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pend *801 ing action against one or more of the parties thereto by:
“(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
“(2) Uniting with defendant in resisting the plaintiff’s demand;, or
“(3) Opposing both plaintiff and defendant.”
Art. 1092.
“A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant him injunctive relief to prevent such sale before adjudication of his claim of ownership.
“If the third person claims a mortgage or privilege on the property seized, the intervention may be filed at any time prior to the distribution by the sheriff of the proceeds of the sale of the seized property, and the court may order the sheriff to hold such proceeds subject to its further orders; and when filed prior to the judicial sale, the court may further order the separate appraisement and sale of the property on which the intervener claims a mortgage or privilege.
“An intervener claiming the proceeds of a judicial sale does not thereby admit judicially the validity, nor is he es-topped from asserting the invalidity, of the claim of the seizing creditor.”
Plaintiff-appellee argues that LSA-C.C.P. art. 1094 prohibits an intervenor from raising most of the defenses herein advanced. We think this contention is well-founded. This provision states:
“An intervener cannot object to the form of the action, to the venue, or to any defects and informalities personal to the original parties.”
In the comments of the reporter under this article is found:
“This above article codifies the jurisprudential rule that an intervener takes the proceedings as he finds them. See Cahn v. Ford, 42 La.Ann. 965, 8 So. 477 (1890); Parish v. Holland, 166 La. 24, 116 So. 580 (1928).”
In Cahn v. Ford, 42 La.Ann. 965, 8 So. 477, 478 (1890) it was said:
“ * * * The defenses which have not already been determined in the suit of Levy v. Ford, 41 La.Ann. 873, 6 South.Rep. 671, are of such a character as only the defendants can urge. The intervenor must take the suit as he finds it. He cannot urge matters that would go to the dismissal of the suit, nor can he complain of the mode of procedure. He cannot substitute himself for the defendant, and make defenses without his consent which are personal to himself.”
In Gilkeson-Sloss Commission Co. v. Bond, 44 La.Ann. 841, 11 So. 220, 221 (1892), the court noted:
“On the first point urged by the interveners it is elementary that in an attachment suit the intervener will not be permitted to urge defenses personal to the defendants. The formality and regularity of the proceedings, the rightful issuing of the attachment, in the absence of fraud and collusion between plaintiff and defendants, are matters pertaining exclusively to the defendant. The intervener is limited to the assertion of his own rights, to show that the property attached is his; that he has a superior privilege on it, or, as alleged in this case, the plaintiffs and defendants perpetrated a fraud in the issuing of the attachment in order to defeat his pursuit of the property. He has nothing to do with the irregularity of the affidavit, the insufficiency of the attachment bond, *802 and other irregularities in the proceedings.”
See also Strawberry Growers’ Selling Co. v. Lewellyn, 158 La. 303, 103 So. 823, 39 A.L.R. 1502 (1925).
The above authorities convince us that the major defenses intervenor seeks to interpose in the case at bar are such as only defendants could assert. In the absence of such assertion by defendants, intervenor may only show that it owns the property; or, that plaintiff and defendants perpetrated fraud upon intervenor by the action. Shreveport Bank & Trust Company has not shown any one of these. There are no allegations of fraud. While there are some vague suggestions that the rights of the intervenor were rather loosely dealt with by Mrs. Galloway, it is academic that allegations of fraud must be specific and the proof thereof convincingly strong to permit recovery. Appellant does contend that Mrs. Galloway has no lessor’s lien and privilege because she was merely a sublessee and not the owner of the building. We find no merit in this contention. In this connection, we find this language in the case of Magnolia Petroleum Co. v. Carter, (La.App. 2 Cir., 1941) 2 So.2d 680, 682:
“It is axiomatic that when a lessee subleases the res he becomes the lessor for the purposes of the sublease and to him accrues the same rights and privileges as would accrue if he had been the owner. A lease, it has been held, is a qualified alienation and for all legal intents and purposes, subject to its terms, a lessee becomes the owner of the thing affected by the lease and unless restrained by covenant, may effectively sublease the thing to others.”
Here, we conclude that plaintiff had a valid lessor’s lien which primed intervenor’s subsequent chattel mortgage.
Accordingly, for the reasons assigned, the judgment of the court below is affirmed at the cost of intervenor-appellant.
Affirmed.