311 So.2d 248 (1975)
Florence Joseph SLIMAN
v.
Hal D. McBEE and Marilyn Sliman McBee et al.
No. 55512.
Supreme Court of Louisiana.
March 31, 1975.
Rehearing Denied April 25, 1975.
*249 William E. Logan, Jr., Gerald C. deLaunay, Lafayette, for plaintiff-applicant.
James T. Guglielmo, Edward B. Dubuisson, Dubuisson, Brinkhaus, Guglielmo & Dauzat, Opelousas, for defendants-respondents.
MARCUS, Justice.
By act of sale dated March 28, 1968, Florence Joseph Sliman sold to Hal D. McBee and Marilyn Sliman McBee (her son-in-law and daughter) certain described property located in the Indian Hills subdivision within the city of Opelousas in St. Landry Parish. The agreed purchase price was $78,000.00, in part payment of which the McBees paid to the vendor $5,000.00 and for the balance thereof executed four promissory notes.[1] The act of sale contained the following language:

*250 It is agreed between the parties that the notes . . . shall be and remain the personal obligation of the makers and their heirs, but no lien shall exist on the lots herein sold securing payment of said notes.
There was no mortgage accompanying the act of sale, which was recorded only in the conveyance records of the parish.
Exactly one year later, on March 28, 1969, Florence Sliman filed suit against the McBees, seeking recognition of her vendor's privilege on the property and its recordation in the mortgage records of the parish. By supplemental petition filed on June 3, 1969, Mrs. Sliman also sought cancellation of the sale for nonpayment of the purchase price on the ground that defendants were in default on payment of the first promissory note, which became due on May 1, 1969.
This lawsuit was settled by an act of compromise dated November 6, 1969, in which Florence Sliman agreed to a dismissal of her claims, including those set forth in the supplemental petition, with prejudice in exchange for payment of the first note by the McBees and their agreement to pay the balance due on the remaining notes according to a revised payment schedule.[2] The settlement agreement further stipulated:
All parties declare and acknowledge that with the exception of the hereinabove referred to notes, No. (sic) 2, 3, and 4, that any and all of the indebtedness which may exist be (sic) either party to the other and any and all claims of every kind which either party may have against the other is hereby compromised and settled and that neither party will make any claim against the other party for any matter or thing which may have arisen or happened prior to the execution of this agreement.
Pursuant to this settlement, the parties moved for and obtained a judgment dismissing all claims with prejudice.
The McBees then executed three mortgages on the property to secure loans from the St. Landry Bank and Trust Company in the amount of $68,800.00. When they defaulted on their obligation to repay the loans, the bank instituted suit for collection of the amount due and recognition of its mortgages on the property. Florence Sliman intervened, seeking a money judgment on the remaining notes which were not paid when due, and recognition of her vendor's lien. The district court rendered judgment in favor of both the bank and Mrs. Sliman against the McBees in the full amounts claimed. However, finding that she had waived her right to a vendor's lien in the act of sale, the court refused to allow Mrs. Sliman a vendor's lien and ruled that her claim was secured only by the judicial mortgage that would result from her recordation of the judgment in the mortgage records. Mrs. Sliman appealed the ruling to the court of appeal, which affirmed the judgment of the district court. St. Landry Bank & Trust Co. v. McBee, 284 So.2d 155 (La.App.3d Cir. 1973). Her application to this court for a writ of certiorari to review the judgment of the *251 court of appeal was denied. 287 So.2d 188 (La.1974).
The present suit against the McBees and the bank was filed during the course of the litigation instituted by the bank on the mortgage notes. In this suit, Mrs. Sliman seeks dissolution of the sale for nonpayment of the purchase price, alleging that she is entitled to a rescission of the sale and return of the property (with the exception of certain described lots that were sold with her written approval or ratification) free and clear of the mortgages held by the bank as a result of the McBees' default on the notes representing the purchase price. Additionally, plaintiff seeks a money judgment against the McBees in the amount of $15,662.53, which she alleges is the difference between the revenues they derived from the property and the amount they paid on the purchase price. After trial on the matter, judgment was rendered in favor of defendants, dismissing plaintiff's petition with prejudice.
Mrs. Sliman appealed the judgment to the court of appeal. In affirming the district court, the court of appeal found in the language of the act of sale not only a waiver by Mrs. Sliman of her right to a vendor's lien, but a waiver of her right to sue for dissolution of the sale for nonpayment of the purchase price as well. Sliman v. McBee, 300 So.2d 585 (La.App.3d Cir. 1974). We granted Mrs. Sliman's application to this court for a writ of certiorari to review the judgment of the court of appeal. 303 So.2d 175 (La.1974).

ISSUES
The issues confronting us for resolution are:
(1) whether plaintiff waived her right to rescind the sale for nonpayment of the purchase price;
(2) if not, whether principles of res judicate or, alternatively, judicial estoppel, foreclose litigation of plaintiff's claim for rescission; and
(3) if not, whether, upon rescission of the sale, the property sold is recoverable free and clear of the mortgages held by the bank.

I.
The court of appeal determined that the language contained in the act of sale (quoted supra), in which Mrs. Sliman agreed that the notes given in payment of the purchase price were to remain a personal obligation and that no lien on the property would secure payment of the notes, constituted a waiver not only of her vendor's lien, but of her right to rescind the sale for nonpayment of the purchase price as well. Review of that ruling requires an understanding of the right of dissolution asserted by the plaintiff as well as application of the rules governing the interpretation of contracts.
The right of a vendor to rescind the sale on account of the vendee's default in payment of the purchase price rests in articles 2045-2047 and 2561-2564 of the Civil Code.[3] Article 2045 provides:
The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
It does not suspend the execution of the obligation; it only obliges the creditor *252 to restore what he has received, in case the event provided for in the condition takes place.
This dissolving, or resolutory,[4] condition is implied in all commutative contracts[5] and takes effect upon the failure of either party to comply with his engagement and the demand for dissolution by the aggrieved party. La.Civil Code art. 2046 (1870).
Where the commutative contract is one of sale, the special rules governing the contract of sale must be consulted, in addition to the general principles announced above. Id. art. 2438. The principal obligation of the buyer is to pay the price of sale. Id. art. 2549(1). Upon his failure to do so, the vendor has two remedies available: one for the enforcement, or affirmance, of the contract and the other for its dissolution. The second right, asserted here by Mrs. Sliman, is an independent, substantive remedy available under article 2561 of the Civil Code[6] that is in no way dependent upon the existence of a security device such as a mortgage or a privilege, which secures the first remedy of the seller, i.e., the enforcement of the buyer's obligation to pay the price agreed upon in the contract of sale.[7]
Should the seller elect the second remedy and sue for rescission of the sale for nonpayment of the purchase price, the buyer's default ". . . operates the revocation of the [seller's] obligation. . .," id. art. 2045, which, in a sale, initially consists of his delivery of the thing sold. Id. art. 2475. Accordingly, the seller may then sue for dissolution of the sale and return of the property. Id. art. 2561. The effect is to place all parties in the same position they occupied prior to the sale.
Clearly, then, in order for Mrs. Sliman to waive the separate and independent right to dissolve the sale upon the buyer's default in payment of the sale price, she must express her intent to relinquish that right in words that make specific reference to the action to dissolve as distinguished from the action to enforce the contract. In interpreting agreements, *253 we are required to ascertain the true intent of the parties as evidenced by their choice of language. Id. art. 1945. Article 1947 directs that
[t]erms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong.
Accordingly, the terms used by the parties in the alleged waiver of legal rights must be construed in light of their legal significance.
In the act of sale, Mrs. Sliman agreed that the notes given by the McBees were to remain a "personal obligation" and that no "lien" would exist on the lots sold securing payment of the notes. Considered in view of their legal significance, the terms used in the act of sale cannot be said to evince an intent, express or implied, on the part of Mrs. Sliman to waive her right to dissolve the sale for nonpayment of the purchase price. As long as Mrs. Sliman held the credit representing the purchase price, two remedies, or courses of action, were available to her in the event the credit was not paid: she could either sue to enforce payment or sue to dissolve the sale. In agreeing that the notes would remain a personal obligation unsecured by a lien, Mrs. Sliman simply forfeited a device securing the buyer's obligation to pay, to which she would otherwise be entitled. She did not forfeit the right to enforce payment, much less the independent, alternative right of dissolution.[8] Moreover, even if she had waived her right to enforce the obligation to pay the purchase price, waiver of one remedy in no way affects the other.

II.
Having determined that the language in the act of sale does not constitute a waiver by Mrs. Sliman of her right to rescind the sale upon the McBees' default in payment of the purchase price, we must next resolve the question whether litigation of the right of dissolution in this suit is foreclosed by principles of res judicata or judicial estoppel applicable to the previous suits between Mrs. Sliman and the McBees. Defendants allege that prior adjudications in both the first and second suits prohibit our consideration of plaintiff's claim for dissolution. Hence, we must evaluate the issues raised and litigated in both suits in resolving this issue.
The Louisiana law of res judicata has suffered from the occasional interjection of terminology and principles borrowed from its counterpart at common law.[9] The common law rule of res judicata is broad and regards an adjudication as final and conclusive not only as to the matter actually determined, but as to every matter that the parties might have litigated and have had decided as incident to or essentially connected with the subject matter of the litigation and every matter coming within the legitimate purview of the original action.[10] Rooted in the civil law,[11] the *254 Louisiana law of res judicata is found in our Civil Code and is of much more limited application that the common law rule.
The principles governing the content and application of the concept of res judicata in Louisiana are located in the section of the Civil Code concerning legal presumptions. One presumption drawn by the law attributes authority to the "thing adjudged" (which is a literal translation of the Latin "res judicata") as proof of the existence or nonexistence of an obligation. La.Civil Code art. 2285 (1870).
The "thing adjudged" consists
of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.
Id. art. 3556(31). Article 2286 details the requisites of a "thing adjudged":
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action;[12] the demand must be between the same parties, and formed by them against each other in the same quality.
A compromise settlement (or, as it is also termed in the Code, a "transaction"[13]) also has, between the interested parties, a force equal to the authority of a thing adjudged. Id. art. 3078. Article 2287 details the effective authority of a "thing adjudged" as a legal presumption. It provides in pertinent part:
Legal presumption dispenses with all other proof, in favor of him for whom it exists.
No proof is admitted against the presumption of the law, when, on the strength of that presumption, it . . . refuses a judicial action . . .
Thus, in determining whether plaintiff's right of dissolution in this case is a "thing adjudged" to which we must accord conclusive authority, we must first consult the compromise settlement that terminated the first suit and then the final judgment on the merits that ended the second suit. Applying the principles of article 2286, if there exists identical demands, causes, and parties between either of the first two suits and the present litigation, the "object of the [former] judgment" acquires the authority *255 of the "thing adjudged." Accordingly, if the right of dissolution was embraced in the object of either of the former judgments, the legal presumption arising in defendants' favor and appended to the "thing adjudged" bars its relitigation.
Applying these principles to the first suit, it is clear that there exists no identity of "cause" with the present litigation. In this context, the term "cause" acquires a meaning somewhat different than its usual meaning as the motive for entering a contract. La.Civil Code art. 1896 (1870). According to Pothier, whose work first brought the Roman law of res judicata to the attention of the redactors of the Code Napole on and resulted in its assimilation into the French Code articles from which our law was drawn, the term "cause" in this context refers to the legal obligation upon which the action is founded.[14] The right of dissolution asserted by Mrs. Sliman in the first suit arose from the McBees' default in payment of the purchase price as represented by the first promissory note. Under the compromise of that suit, the parties agreed to settle all claims that "may have arisen or happened prior to the execution of [the] agreement." Accordingly, all claims based upon the notes that were not yet due (the second, third, and fourth notes) were specifically excluded from the settlement. The judgment of dismissal entered pursuant to the compromise decreed that "all claims sued on herein. . . be and the same are hereby dismissed, with prejudice." (Emphasis added.) Thus, the compromise and dismissal of the first suit were limited to claims asserted therein. The present suit asserts a separate and distinct claim that arose after the settlement of the first suit, viz., the right to dissolve the sale on account of the McBees' default in payment of the remaining notes. Accordingly, absent an identity of cause as required by article 2286, Mrs. Sliman is not foreclosed by principles of res judicata from asserting her present demand by reason of the compromise settlement of the first suit.
The second suit presents no bar to the litigation of Mrs. Sliman's claim, either, as her right of dissolution was never raised. Her only demands in that suit were for a money judgment and recognition of her vendor's lien, both arising from her right to enforce, rather than resolve, the contract. Hence, there was no identity of demands as required by article 2286.
Alternatively, defendants urge that principles of judicial estoppel bar further litigation of Mrs. Sliman's right of dissolution, citing, inter alia, California Co. v. Price, 234 La. 338, 99 So.2d 743 (1957). The rule is said to bar reconsideration of matters previously determined by a court of competent jurisdiction and raised again by the same parties or their privies. Although the application of this common law *256 doctrine in the civil law system of Louisiana is not free from doubt,[15] this is of no moment here. Even under the doctrine of judicial estoppel, the matter of Mrs. Sliman's right of dissolution for nonpayment of the promissory notes that became due subsequent to the compromise settlement was never adjudicated by a court, in either the first or second suit. Accordingly, Mrs. Sliman is not foreclosed by judicial estoppel from asserting her right of dissolution and is entitled to rescind the sale by reason of the failure of the buyers, the McBees, to pay the full purchase price.

III.
The only question that remains is whether the return of the property is to be free and clear of the mortgages given by the McBees to the bank to secure the loans made to them. The answer here is well settled. We stated in Stevenson v. Brown, 32 La.Ann. 461, 464 (1880) that "[a] demand in resolution is a demand for the property itself, and embraces in it the abrogation of any and all alienations and encumbrances placed upon it by the vendee." (Emphasis added.) The failure of the purchaser to pay the sale price causes the resolutory condition to take effect, which places matters in the same state as though the obligation had not existed. La.Civil Code arts. 2045-47, 2561 (1870). Thus, judicial dissolution of a sale for nonpayment of the price frees the property of all mortgages created by the purchaser. E.g., Adler v. Adler, 126 La. 472, 52 So. 668 (1910) and authorities cited therein.

CONCLUSION
Mrs. Sliman, the plaintiff herein, is entitled to a dissolution of the sale to the McBees, the defendants herein, on account of their default in full payment of the purchase price. As noted above, the effect of the dissolution is to place matters in the same state as though the obligation had not existed. The vendor gets the property back, and the vendee is discharged from his obligation to pay the price. If he has paid part of the price, that which he has paid is restored to him.[16]
Application of this rule to the instant controversy is not without some difficulty, since the McBees, in developing the Indian Hills subdivision (of which the conveyed property formed a part), reconveyed several lots from within the property by sales that Mrs. Sliman admits by her petition she "joined and/or ratified . . . ." Accordingly, she excludes the lots thus sold from her demand and seeks the return of the remainder of the property free and clear of all liens and encumbrances. Thus at most, Mrs. Sliman is obliged to refund an amount not exceeding an amount representing the purchase price of the property returned to her, i.e., a price bearing such proportion to the total sale price as the portion of the tract that is returned bears to the entire tract originally conveyed.[17] Having determined the amount of the maximum refund, we are then able to determine whether the amount paid by the McBees exceeds that figure. If Mrs. Sliman has received more than the maximum refund, she is entitled to retain the excess. If she has received less, she must refund all that she has received (an amount admitted in her petition to be $24,750.00). A determination of what proportion the property to be returned bears to the tract originally conveyed cannot be made from the record before us; the matter must be remanded to the trial court for final resolution.
*257 Plaintiff also seeks a money judgment of $15,662.53, which she alleges to be the difference between the revenues derived by the McBees from their resale of the properties and the amount they paid on the purchase price. However, the record is devoid of any showing by plaintiff that would warrant such an award. Hence, the award is denied.
Finally, we note that article 2562 of the Civil Code allows us to ". . . grant to the buyer a longer or shorter time, according to circumstances . . ." not to exceed six months, within which to pay all the remains due on the purchase price and avoid dissolution of the sale. However, our review of the record fails to disclose any "circumstances" that would justify the exercise of our discretion in granting a delay. The McBees failed to answer the suit and have made no appearance at any time in these proceedings. Hence, an extension of time would offer no reasonable prospect of payment.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed; it is hereby ordered, adjudged and decreed that there be judgment herein in favor of Mrs. Florence Joseph Sliman and against Hal D. McBee, Marilyn Sliman McBee, and the St. Landry Bank & Trust Company, decreeing the sale of March 28, 1968 between Mrs. Florence Joseph Sliman, as vendor, and Hal D. McBee and Marilyn Sliman McBee, as vendees, dissolved and of no effect insofar as it relates to any and all property not subsequently reconveyed by the McBees with the written approval and/or ratification of Mrs. Sliman.
It is further ordered that the matter be remanded to the trial court to fix, after a contradictory hearing, that portion of the property contained in the original deed (March 28, 1968) not transferred by the McBees with the written approval and/or ratification of Mrs. Sliman. This portion of the property is to be returned to Mrs. Sliman free and clear of any mortgages or other encumbrances not placed thereon by her. Likewise, the trial court shall fix the amount to be refunded to the McBees in accordance with the views herein expressed. Thereafter, the trial court shall enter an appropriate decree effecting the return of said property predicated on the refund of the purchase price.
All costs of these proceedings are assessed against Hal D. McBee, Marilyn Sliman McBee, and the St. Landry Bank & Trust Company.
Reversed and remanded.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
Although I concur with the majority's analysis of the law concerning resolutory conditions and vendor's liens, I note that the facts of this case require a different resolution of the case.
When a vendor waives his vendor's privilege in the act of sale and does not retain a mortgage on the property, there is no recordation of the retention of the right to resolution of the sale. This court has properly held that resolution of the sale does not depend on recordation. The French solved the problem created by the absence of recordation of the resolutory condition by enacting a provision in the law of recordation (Law of Recordation of 23 March 1885, Art. 7) which barred the exercise of the action of resolution after the extinction of the privilege. Louisiana does not have such a provision and, therefore, the conclusion that the action in resolution can be maintained even though no privilege exists in favor of the vendor plaintiff is correct.
*258 The action to resolve the sale can be renounced by the vendor. Planiol states:
"The action in resolution is extinguished by application of the general rules of law.
". . . it may be extinguished either by the effect of a renunciation made by the vendor,
"The renunciation which the vendor makes can be express or tacit. . . ." Planiol, Traite Elementaire De Droit Civil, Vol. 2Part 1, No. 1567, Louisiana State Law Institute Translation.
In this case the vendor expressly renounced the right to resolve the sale. As noted in the majority opinion the settlement agreement of the first suit stated:
"All parties declare and acknowledge that with the exception of the hereinabove referred to notes, No. (sic) 2, 3, and 4, that any and all of the indebtedness which may exist be (sic) either party to the other and any and all claims of every kind which either party may have against the other is hereby compromised and settled and that neither party will make any claim against the other party for any matter or thing which may have arisen or happened prior to the execution of this agreement." (Emphasis added).
The resolutory condition is a right of the vendor. This vendor renounced all rights except the rights contained in the notes.
I would find that the resolutory condition was expressly renounced in the settlement agreement, and dismiss the suit.
NOTES
[1] The notes were payable as follows: Note No. 1, in the amount of $15,000.00, due May 1, 1969; Note No. 2, in the amount of $18,000.00, due May 1, 1970; Note No. 3, in the amount of $20,000.00, due May 1, 1971; Note No. 4, in the amount of $20,000.00, due May 1, 1972. All four notes bore interest at the rate of seven (7%) per cent per annum from maturity until paid and were paraphed "Ne Varietur" for identification with the act of sale.
[2] This revised schedule, attached to the act of compromise and incorporated therein by reference, stipulated specific amounts to be paid to Mrs. Sliman upon the resale by the McBees of individual lots within the subdivided property. Next to a listing of each lot was the amount due Mrs. Sliman upon the resale of that particular lot. The total amount due under the revised schedule approximated the balance remaining unpaid on the second, third, and fourth notes, and the amounts paid Mrs. Sliman from the resale of the lots were to be credited toward the remaining notes, from the earliest to the latest due. Upon the due date of each promissory note, any amount remaining unpaid on that note became due and payable.
[3] For more complete discussions of the right to rescind a sale in Louisiana for nonpayment of the purchase price see 2 A. Yiannopoulos, Louisiana Civil Law Treatise: Property § 109 (1966); Monroe, The Implied Resolutory Condition for Non-Performance of a Contract, 12 Tul.L.Rev. 376, 508 (1938); Yiannopoulos, Real Rights in Louisiana and Comparative Law: Part I, 23 La.L.Rev. 161, 229-34 (1963). For the French view see 2 M. Planiol, Traite elementaire de droit civil Nos. 1556-70 (11th ed. 1939 La.State L.Inst. transl. 1959).
[4] The French version of the article in the Civil Code of 1825 reads "la condition resolutoire," which is more accurately translated as a resolutory, rather than dissolving, condition. See 16 West's LSA-Civil Code, p. 1159 (J. Dainow ed. 1973).
[5] Commutative contracts are those in which what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given, or promised by the other.

La.Civil Code art. 1768 (1870). Absent expression to the contrary, a contract containing mutual covenants is presumed to be commutative. Id. art. 1770.
[6] Article 2561 provides:

If the buyer does not pay the price the seller may sue for the dissolution of the sale. This right of dissolution shall be an accessory of the credit representing the price, and if it be held by more than one person all must join in the demand for dissolution; but if any refuse, the others by paying the amount due the parties who refuse shall become subrogated to their rights.
(Emphasis added.) In its original form, which was a verbatim translation of article 1654 of the Code Napole on of 1804, article 2561 contained only the italicized first sentence. However, prior to its amendment, the jurisprudence had appended two rules to the article that inhibited its use. First, if there was more than one seller, all had to join in the action to dissolve or the action would fall. E.g., Bankston v. Owl Cypress Co., 117 La. 1053, 42 So. 500 (1906); Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906 (1901); Heirs of Castle v. Floyd, 38 La.Ann. 583 (1886). Second, absent a special act by which the vendor assigned his right to dissolve the sale, the transferee of notes representing the purchase price acquired only the right to sue on the notes. E.g., Hamilton v. State Nat'l Bank, 39 La.Ann. 932, 3 So. 126 (1887); Swan v. Gayle, 24 La.Ann. 498 (1872). For an interpretation of article 2561 after its amendment see Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944).
[7] See, e.g., Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944); Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906 (1901); McKenzie v. Bacon, 41 La.Ann. 6, 5 So. 640 (1889); Stevenson v. Brown, 32 La.Ann. 461 (1880).
[8] As we stated in Stevenson v. Brown, 32 La.Ann. 461, 463 (1880):

The fact that the vendor has lost, or not preserved, his vendor's lien, or mortgage, presents no sort of obstacle to the exercise of this right of resolution.
[9] E.g., P. Olivier & Sons v. Board of Comm'rs, 181 La. 802, 160 So. 419 (1935); Harvin v. Blackman, 121 La. 431, 46 So. 525 (1908). But see, e.g., Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (1954), noted in 29 Tul.L.Rev. 592 (1955); Hope v. Madison, 194 La. 337, 193 So. 666 (1940); State v. American Sugar Refining Co., 108 La. 603, 32 So. 965 (1902).
[10] See Comment, Res Judicata"Matters Which Might Have Been Pleaded" (Part I), 2 La.L.Rev. 347 (1940). For a comprehensive treatment of the concept and its application at common law see Developments in the LawRes Judicata, 65 Harv.L.Rev. 818 (1952).
[11] The Louisiana code articles on res judicata are translations of corresponding articles in the Code Napoleon. (For example, article 2286 is drawn from French Civil Code article 1351.) The French law is drawn from the writings of Robert Pothier, who, in turn, derived the concepts from the Roman jurisconsults. See, e.g., State v. American Sugar Refining Co., 108 La. 603, 32 So. 965 (1902); See generally 1 R. Pothier, Treatise on the Law of Obligations 568-93 (W. Evans transl. 1853) [hereinafter cited as Pothier].
[12] The phrase "cause of action" is a mistranslation. The French version of the article in the Civil Code of 1825 contains only the phrase "la meme cause," (literally, "the same cause"). However, the English version of the article translated the French to read "the same cause of action," and this error was carried forward into the present version of the article. It is well settled that, where the French version of the source article in the Code of 1825 is mistranslated and the error is carried forward into the 1870 Civil Code, the error is to be disregarded and the proper translation given effect. E.g., Bradford v. City of Shreveport, 305 So.2d 487 (La.1974) and authorities cited therein. Thus, proper interpretation of article 2286 requires a consideration of the broader concept of cause at civil law rather than the common law cause of action. See Comment, Res Judicata"Matters Which Might Have Been Pleaded" (Part II), 2 La.L.Rev. 491 (1940); 33 Tul.L.Rev. 701 (1959). For a thorough discussion of the French concept of res judicata (the French version of the predecessor of article 2286 in the Code of 1825 is identical to article 1351 of the Code Napole on) see Pothier, supra note 11, at 581-93.
[13] A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

La.Civil Code art.3071 (1870).
[14] Pothier, supra note 11, at 585 offers the following illustration:

Suppose for instance, it has been agreed between you and me, that for a piece of work which I was to do for you, and have actually done, you should give me 101. or your horse, at my election; afterwards you sell me the horse for a certain price, and I institute the action ex empto against you to deliver it, and not being able to prove the sale, the demand is dismissed, this does not preclude me from demanding the same horse, by the actio ex prescriptis verbis, by virtue of the agreement.
The reason of the difference is, that the same thing may be due to me by virtue of different obligations; and I have as many different claims, and as many actions against my debtor, as there are different causes of obligation, which actions involve as many different questions, and a judgment dismissing one of them, decides nothing with regard to the others, and consequently cannot preclude me from pursuing them; the judgment in the action ex empto, which decides that you do not owe me the horse by virtue of the sale, does not establish that you do not owe it to me by virtue of a different contract, nor consequently preclude me from demanding it, by an action founded upon such contract. (Emphasis added.)
[15] On at least one occasion, a court of appeal has rejected its application outright. Bordelon v. Landry, 278 So.2d 173 (La.App.4th Cir. 1973); cf. Shell Oil Co. v. Texas Gas Transmission Corp., 176 So.2d 692 (La.App.4th Cir. 1965).
[16] E.g., Louis Werner Saw Mill Co. v. White, 205 La. 242, 17 So.2d 264 (1944).
[17] The mathematical equation for determining the maximum refund reads thus:

×(maximum refund) acreage returned
----------------------- = -------------------
total purchase price total acreage
 originally conveyed