HOOD, Judge.
Plaintiff, William Ivy, Jr., obtained a default judgment against defendants, Mr. and Mrs. Clyde H. Day, for the amount claimed to be due on two promissory notes, with recognition of mortgages securing those notes. The mortgaged property was seized and sold at two separate public sales to satisfy that judgment. After each such sale, John Makar intervened, alleging that he is the holder of a note secured by a mortgage affecting the same property, and demanding that he be paid by preference out of the proceeds of the sales. Judgment was rendered by the trial court dismissing Makar’s intervention to the last sale, and decreeing that Ivy is entitled to first priority on the proceeds of that sale. Intervenor Makar has appealed. We affirm.
The central issue presented is whether the mortgage which secures the note held by intervenor Makar primes either or both of the mortgages securing the indebtedness of Mr. and Mrs. Day to plaintiff Ivy.
The record shows that when this suit was filed originally Ivy was the owner of two promissory notes executed by Mr. and Mrs. Day, made payable on demand to the order of “Ourselves or any Future Holder,” and endorsed in blank by the makers. One of these notes, dated August 2, 1963, was for $2,000.00, and it was secured by a mortgage on a 40-acre tract of land in Vernon Parish. The other note, dated August 12, 1963, was for $12,000.00, and it was secured by a mortgage affecting an 8.84-acre tract in the same parish. Each of these mortgages was filed for record in the mortgage records of Vernon Parish on the day the note which it secured was executed.
Intervenor Makar is the holder of a promissory note for $50,000.00, dated September 26, 1963, signed by Mr. and Mrs. Day, and made payable on demand to the order of “Future Holder or Holders.” This note was secured by a mortgage affecting both of the tracts of land which had been mortgaged to secure the notes held by Ivy. The Makar mortgage was recorded in the mortgage records of Vernon Parish on September 27, 1963, which was more than six weeks after the Ivy mortgages had been filed and recorded. According to the mortgage records, therefore, Makar was the holder of a second mortgage on these two tracts of land.
Ivy instituted this suit on February 24, 1967, demanding judgment for the face amount of the two notes held by him, and for recognition of the mortgages which secured these notes. No answer was filed by defendants, and a default judgment was rendered on June 19, 1967, in favor of Ivy and against Mr. and Mrs. Day, for “the full sums of $2,000.00 and $12,000.00,” plus interest and attorney’s fees. The judgment also decreed that “the mortgages be recognized and maintained.” No appeal was taken, and that judgment now has become final.
After this judgment was rendered, Ivy had a writ of fieri facias issued, and pursuant to that writ the 40-acre tract of land *139 affected by the $2,000.00 mortgage was seized and sold at public sale to satisfy the judgment. That sale was held on September 10, 1968. Immediately following that sale Makar intervened, seeking a judgment determining the rank of the mortgages on the property sold and decreeing that Makar should be paid in preference to Ivy from the proceeds of the sale. The proceeds of that sale were paid into the registry of the court, and they have not yet been distributed. There is no formal judgment in the record determining the issues presented by that intervention.
Ivy then had another writ of fieri facias issued, and pursuant to that writ the 8.84-acre tract of land affected by the $12,000.00 mortgage was seized and sold at public sale to satisfy the judgment. That sale took place on June 4, 1969. Makar intervened after that sale, praying for judgment determining the rank of mortgages on that property and ordering that he be decreed to have a priority on the proceeds of the sale. At the sale held on the last mentioned date, the 8.84-acre tract of land was adjudicated to Makar, he being the highest bidder, for a price of $21,667.00. That sum was deposited in the registry of the court, and eventually a bond was substituted for the cash. The proceeds of the last mentioned sale have not been distributed.
The interventions, or at least the last intervention, filed by Makar were tried and judgment was rendered by the trial court on March 5, 1970, (1) dismissing the last petition of intervention filed by Makar, (2) decreeing that the judgment for $12,000.00 in favor of Ivy and against Mr. and Mrs. Day is secured by a first lien and mortgage on the 8.84-acre tract of land, (3) decreeing that plaintiff Ivy is entitled to first priority to the proceeds of the sale of the 8.84-acre tract, and (4) reserving to Ivy the right to proceed against Makar and the Sheriff for the balance of the proceeds of that sale to the extent of his judgment. Intervenor Makar has appealed from that judgment.
Makar contends, first, that the $2,000.00 note on which the judgment of June 19, 1967, was partially based, was paid in full before that judgment was rendered, that the debt evidenced by that note thus was extinguished by payment before Ivy acquired it, that the note thus was unenforceable and that plaintiff is not entitled to judgment against the Days for the amount of the $2,000.00 note. He argues that the mortgage which secured that note fell when the principal debt was extinguished, that Ivy was not a holder in due course of the note, that his claim is subject to any defense which might be urged by the makers, ancj that “a note once paid cannot be revived unless it is clearly and definitely a collateral mortgage and puts the public on notice.”
We have concluded that under the circumstances presented here Makar is precluded from urging or attempting to show that Ivy is not entitled to judgment against the Days on the $2,000.00 note on the ground that that note was paid and the debt was extinguished prior to the rendition of the June 19, 1967, judgment. The defense of payment or set-off is a special defense which is personal to the debtor, and in the absence of allegations of fraud it generally cannot be pleaded or asserted by a third opponent or intervenor. LSA-C.C.P. Art. 1094; Galloway v. Levitt, 135 So.2d 798 (La.App. 2 Cir. 1961); Pringle Assoc. Mortgage Corporation v. Eanes, 197 So.2d 160 (La.App. 1 Cir. 1967; reversed on other grounds, 251 La. 711, 206 So.2d 81).
We agree, assuming that Ivy was not a holder in due course of the note, that in the original suit Mr. and Mrs. Day could have pleaded and asserted the special defense of payment. Makar, however, could not have made that defense for defendants even at that stage of the proceedings, in the absence of allegations of fraud and of some pecuniary interest. The Days did not appear or plead that special defense, and a default judgment was ren *140 dered against them. That judgment has now become final. We think the rendering of that judgment settled most of the questions relating to the indebtedness of Mr. and Mrs. Day to Ivy. It determined finally that as of the date of that judgment the Days owed Ivy the face amount of both of the above mentioned notes, with interest and attorney’s fees, and that the mortgages securing those notes are valid and enforceable. Makar does not have the right to attack that judgment collaterally. He thus is barred from attempting to show in this proceeding that the mortgage notes held by Ivy were extinguished by payment.
Intervenor contends, next, that ’’both of the notes on which Ivy’s original demands were based were paid and returned to the makers, and that they then were re-issued to Ivy after Makar had become the owner of the $50,000.00 mortgage note. Makar takes the position that the principal indebtedness evidenced by each such note, as well as the mortgage securing it, became suspended when the note was paid and returned to the Days, and that if the mortgage was revived at all by the re-issuance of the note it became effective only as of the date on which the note was re-issued.
Although Makar cannot attack collaterally the judgment obtained by Ivy, he has the right to show, if he can, that the mortgage securing the note which he holds primes the judicially recognized mortgages held by Ivy. Such an assertion is merely an attempt to establish the priority of valid mortgages and does not constitute a collateral attack on Ivy’s judgment of June 19, 1967. It does not question the amount or the existence of the indebtedness of the Days to Ivy, and neither does it attack the validity of the mortgages recognized and maintained by that judgment. The inter-venor is merely seeking to show that his lien or mortgage is entitled to priority over the mortgages held by Ivy.
The evidence shows that Makar acquired the $50,000.00 note on April 29, 1966, and that Ivy acquired the $2,000.00 and the $12,000.00 notes on December 19, 1966. Makar argues that the mortgages securing the Ivy notes became effective only from the last mentioned date, that Makar’s mortgage was of record and became effective several months earlier, and that interve-nor’s mortgage thus primes the two liens or mortgages which secure the notes acquired by Ivy. In support of that argument Makar relies on Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4 Cir. 1964); and Installment Plan, Inc. v. Justice, 209 So.2d 68 (La.App. 4 Cir. 1968).
It is unnecessary for us to consider or determine the legal issues raised by inter-venor, because the evidence fails to show that either the $2,000.00 note or the $12,000.00 note was ever paid, or that they were ever returned to and re-issued by the makers.
Mrs. Day testified that she paid the balance due on the $2,000.00 note while her brother was holder of that note. She concedes, however, that the note was never returned to her, and that she never re-issued it to Ivy or to anyone else. The record shows that on May 20, 1968, after that payment allegedly had been made, both of the Days signed a compromise agreement in which they specifically admit their indebtedness under both notes. Neither of the defendants claim that the notes have ever been in their possession at any time since they were originally executed. There is nothing to show that they borrowed any additional amounts on those notes or that they re-issued them. We think the evidence shows that the indebtedness of the Days on the notes has never been paid or extinguished. There thus is no factual basis on which intervenor can claim that the mortgages securing those notes became suspended.
In the above mentioned compromise agreement, entered into on May 20, 1968, Ivy agreed to forego having the 8.84-acre tract of land seized and sold for a period of time to give the Days an opportunity to pay the amount due on the judgment. The Days agreed to dismiss an injunction pro *141 ceeding which they had filed and to pay Ivy the aggregate sum of $10,545.27, plus the interest and attorney’s fees provided in the judgment, in installments over a period of time. The Days failed to make the payments provided in that agreement, and all parties apparently concede that there has been a breach of that agreement.
Makar contends that the compromise agreement constituted a “new loan” or a “novation,” that the mortgages securing the Ivy notes ceased to be effective prior to that time, and that they were revived or became effective only from the date of that agreement. He argues that the mortgage securing his $50,000.00 note became effective before the date of that agreement, and that it thus primes the mortgages securing the Ivy notes.
We do not interpret the compromise agreement entered into between Ivy and the Days as constituting a new loan or as a novation. In that agreement, the Days specifically acknowledged their indebtedness under the mortgage notes and under the judgment, and they confirmed the fact that the mortgages were valid. Their primary purpose in entering into the agreement obviously was to try to save the 8.84-acre tract from being sold. When they failed to make the payments agreed upon, Ivy correctly considered the contract as having been breached and he proceeded to foreclose on the 8.84-acre tract.
Our conclusion is that the compromise agreement entered into between the parties on May 20, 1968, did not create a new loan or a novation, and that it did not change the rank or priority of the mortgages which affected either of the two tracts of land involved in this suit.
Intervenor contends, finally, that Ivy cannot recover from the Days more than the amount which he paid for the two notes. The evidence indicates that Ivy paid $10,545.27 for those notes on December 19, 1966. Makar contends that the indebtedness of the Days under both notes thus cannot exceed that amount, and that since Ivy is not a holder in due course he is not entitled to recover from the Days the face amount of the notes, or the aggregate sum of $14,000.00, plus interest and attorney’s fees.
We find no merit to this argument. We have already determined that the defense of payment or set-off is a special defense which can be urged only by the debtors. No such defense was urged by the Days in this suit, and we think the judgment rendered on June 19, 1967, finally determined the amount of their indebtedness to Ivy, and the fact that the indebtedness was secured by two mortgages. Intervenor does not have the right to attack that judgment collaterally in this proceeding.
For the reasons herein set out, we find no error in the judgment of the trial court dismissing 'Makar’s intervention, and decreeing that the mortgage executed by defendants securing the $12,000.00 note held by Ivy, primes the mortgage held by intervenor, and that Ivy is entitled to first priority on the proceeds of the Sheriff’s sale of the property affected by that mortgage to the extent of his judgment.
The judgment appealed from is affirmed. The costs of this appeal are assessed to the intervenor-appellant.
Affirmed.