CUTRER, Judge.
This case has been remanded by the Supreme Court[1] for further proceedings as a result of the granting of writs [2] wherein the ruling of this court (that a state court lacked jurisdiction to decide the ownership of motor carrier operating certificates and permits issued by the Interstate Commerce Commission) was reversed. This court followed the authority of Graziani v. Elder & Walters Equipment Company, 209 La. 939, 25 So.2d 904 (1946) in so ruling. The Supreme Court overruled Graziani. The ruling of this court was thus reversed and the case was remanded for further proceeding.
The facts were summarized by us in our previous opinion[3] and for the purpose of clarity we repeat them as follows:
“On January 5, 1970, plaintiff and defendant executed a document entitled ‘Purchase Agreement.’ This agreement was, in reality, the sale of certain vehicular equipment and motor carrier operating rights issued by the Interstate Commerce Commission and the Louisiana Public Service Commission, contingent upon the approval of these two regulatory agencies. The sale involved the following operating rights: ICC Certificate of Public Convenience and Necessity Number MC-133168; ICC Contract Carrier Permit Number MC-117969 (Sub. 3); and Louisiana Public Service Commission Contract Carrier Permit No. 1258-A.
*1266 The consideration for the transfer of the trucking equipment and the operating rights was $20,000.
“The parties on January 5, 1970, further executed an instrument entitled ‘Personal Services Employment Contract’ by which plaintiff was to receive, for personal services rendered, the sum of $4,200 per year for a period of five years.
“A third document, entitled ‘Purchase Agreement Amendment’, was entered into on January 5, 1970. The purchase agreement amendment provided that:
‘As part of the foregoing purchase agreement, BUYER shall not sell, transfer, assign, alienate, or otherwise dispose of, mortgage, hypothecate, pledge or otherwise encumber said certificates of public convenience and necessity, nor any received by BUYER in lieu thereof, and shall not permit same to become inoperable until all sums of money due or to become due Stanley J. Smith under the “Personal Services Employment Contract” executed this day between the parties hereto have been paid in full.’
“Defendant, after obtaining approval from both the Interstate Commerce Commission and the Louisiana Public Service Commission, began using the trucks and trailers to operate over the routes authorized under the certificates and permits. Plaintiff received, in due course, four of his $4,200 annual personal service payments, but the fifth and final payment was never made. As a result of the failure to make the final payment, plaintiff instituted suit requesting a rescission of the operating rights for failure of the defendant to pay the full purchase price. Plaintiff further requested a judgment declaring him to be the lawful owner of the operating authorities free and clear of any encumbrances which may have been placed upon those authorities subsequent to the sale.
“The trial court judgment rescinded the January 5, 1970 sale and declared plaintiff to be the true and lawful owner of the three operating authorities free and clear of any mortgages, liens, or encumbrances attached to these operating authorities on or after January 5,1970.” [4]
The single issue before this court is whether the trial judge erred when he ruled that a default in the payment of the annual installment due under the “Personal Services Employment Contract” ($4,200.00) could serve as a basis for setting aside the sale of the operating certificates and permits issued by the Interstate Commerce Commission.
The plaintiff contends that the “Personal Services Employment Contract” was part of the consideration for the “Purchase Agreement” as amended, and a default in the annual payment of $4,200 under the “Personal Services Employment Contract” would be grounds for setting aside the “Purchase Agreement” for the sale of the certificates. The defendant contends that the “Personal Services Employment Contract” is a separate instrument and the annual payments thereunder are not a part of the consideration for the “Purchase Agreement.” The defendant further contends that parol evidence is inadmissible to show otherwise.
The crucial provisions of the “Purchase Agreement Amendment” (quoted supra), along with a letter of acknowledgment by D. E. Lester, President of defendant, clearly reflect that the installment payments of the “Personal Services Employment Contract” were part of the consideration for the “Purchase Agreement” for the sale of the certificates. The amendments prohibit any encumbrance or sale of the permits until all of the installments under the “Personal Services Employment Contract” are paid in full. The letter from D. E. Lester, President of Delta Express, Inc., to the plaintiff dated July 15, 1975, stated as follows:
*1267 “We draw your attention to the final installment due under our contract of purchase of ICC Authority. [Emphasis added]
“In this regard, please be aware of pending transactions involving Delta Express, Inc.
“We expect to conclude these matters in approximately forty-five to sixty days, thereby liquidating our debt to you.
“Thanking you for your continued patience.”
Mr. Lester expressly acknowledges that the “final installment” is due under the contract of purchase of ICC Authority (certificates and permits). This “final installment” refers to the “Personal Services Employment Contract,” as that is the only installment contract involved in this transaction. Further, the fifth annual payment under the “Personal Services Employment Contract” became due on January 5, 1975. It would have been six months overdue when the letter was written.
The trial court correctly held that the consideration for the “Personal Services Employment Contract” was also an installment consideration for the purchase of the permits. The default on this installment contract is grounds for rescission.
Having so reached the above conclusion, a discussion of the parol evidence issue becomes unnecessary.
The plaintiff, in his brief, brings the court’s attention to an error in the trial court judgment wherein the judgment failed to order the return to defendant of the four installments of $4,200 each in order to comply with the law of rescission. The plaintiff is correct in his observation. The failure of the purchaser to pay the sale price causes the resolutory condition to take effect, which places matters in the same state as though the obligation had not existed. La.Civil Code art. 2045.[5] If the vendor has paid part of the purchase price, that which he has paid is restored to him. Sli-man v. McBee, 311 So.2d 248 (La.1975). Also, $1,000.00 was paid for the certificates and permits under the “Purchase Agreement.” This sum also must be restored to defendant.
For these reasons, the judgment of the trial court shall be amended by ordering the payment by plaintiff to the defendant the sum of $17,800.00, which sum is payable at the time the certificates are transferred to plaintiff by defendant. In all other respects, the judgment of the trial court is affirmed. All costs are to be paid by defendant.
AMENDED AND AFFIRMED.

. Stanley J. Smith v. Delta Express, Inc., 365 So.2d 1345 (La.1978).

. 360 So.2d 1179 (La. 1978).

. 359 So.2d 1066 (La.App. 3rd Cir. 1978).

. Appellant did not put at issue, either in brief or oral argument, the portion of the trial court’s judgment adjudicating the ownership of the contract carrier permit issued by the Louisiana Public Service Commission described in the “Purchase Agreement” dated January 5, 1970. This portion of the trial court’s judgment was thus affirmed.

. Civil Code Art. 2045 provides as follows:
“The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
“It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place.”